Trent M. Gardner (I.D. # 7477)
Jeffrey J. Tierney (I.D. # 12989)
**GOETZ, BALDWIN & GEDDES, P.C.**
35 North Grand
P.O. Box 6580
Bozeman, MT  59771-6580
Phone: (406) 587-0618
Fax:    (406) 587-5144
Email: tgardner@goetzlawfirm.com
         jtierney@goetzlawfirm.com

Joseph V. Womack (I.D. # 2641)
**WALLER & WOMACK, P.C.**
303 North Broadway, Suite 805
Billings, Montana 59101
Telephone:  (406) 252-7200
Facsimile: (406) 252-4266
Email: jwomack@jvwlaw.com

Attorneys for Joseph V. Womack, Trustee

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MONTANA

In re

**JOHN HENRY SCHNEIDER**,

Debtor.

Case No. 14-61357

NOTICE OF HEARING
Date: April 28, 2015
Time: 9:00 a.m.
Location: Bighorn Courtroom
U.S. Courthouse, 2601 2nd Ave. North
Billings, Montana

TRUSTEE'S OPPOSITION TO DEBTOR'S MOTION FOR
RECONSIDERATION

Trustee Joseph V. Womack, as Chapter 7 Trustee for the bankruptcy estate of John Henry Schneider, through counsel, responds in opposition to Debtor's Motion for Reconsideration (Doc. 115) concerning this Court's Order granting the Motion for Rule 2004 Examination directed to Greear, Clark, King, P.C. (Doc. 110).

I. **DEBTOR AND TRUSTEE AGREE THAT THE PROPER PROCEDURE IS FOR THE GREEAR FIRM TO PRODUCE ALL NON-PRIVILEGED DOCUMENTS AND A PRIVILEGE LOG FOR THOSE DOCUMENTS CLAIMED AS PRIVILEGED.**

At this point, there is no actual dispute between Trustee and Debtor. Before Debtor ever filed his Motion for Reconsideration, Trustee's counsel suggested that the Greear firm produce all non-privileged documents and a privilege log for those documents withheld upon a claim of privilege. Then, if a dispute remained, the issue could be brought to the Court. At the time the Debtor flatly rejected that procedure. However, the Debtor now agrees that is the correct procedure, and that, in the event of a dispute, the Court should conduct an *in camera* review. Trustee agrees. The Court should so order.

On March 5, 2015, the undersigned emailed Debtor's counsel, Harold V. Dye, informing him that the Trustee was investigating claims on behalf of debtor's bankruptcy estate and that the Trustee intended to seek copies of the files of Debtor's attorney, Michael Greear, regarding representation of Debtor and Debtor's related entities. *See* email, March 5, 2015 (Exhibit 1, hereto). The undersigned informed Mr. Dye that the simplest route would be for Mr. Schneider to inform Mr. Greear that he consented to the files being provided to the Trustee, but, absent such consent, Trustee would file a motion for a 2004 exam and subpoena the documents.

In response, on March 5, 2015, Mr. Dye telephoned the undersigned and informed the undersigned that Mr. Dye agreed that Mr. Greear's files regarding his representation of Debtor were property of the estate and that the undersigned

should contact Mr. Greear directly to obtain the files, and the Debtor would consent to such production.

Accordingly, on March 9, 2015, the undersigned sent a letter to Michael Greear requesting those files which the Court has since ordered to be produced. *See* Letter (Exhibit 2, hereto). The undersigned received no response from Mr. Greear.

Instead, on March 17, 2015, the undersigned received an email from Debtor's counsel, Mr. Dye, stating that the Debtor had changed his position and now contended that the Trustee did not control the Debtor's individual attorney-client privilege. *See* Exhibit 1, pp. 2–3. In that same email, Mr. Dye admitted that much of the requested production was not privileged, but asked that the Trustee recast the request to eliminate privileged communications.

In response, the undersigned emailed Mr. Dye on March 18, 2015, informing him that the Court had granted the motion for the 2004 exam and that the Trustee intended to serve the subpoena. The undersigned suggested that Debtor and the Greear firm could produce the large amount of information that they agreed is not privileged and that, as to anything for which privilege was claimed, Debtor or Mr. Greear could assert such privilege according to the rules. The undersigned then informed Mr. Dye that, "once I see what is produced, I can determine whether we do, indeed, need to go to the court and argue about the remainder." *See* Exhibit 1, pp. 1–2.

Notably, this suggestion by the undersigned is exactly what the Debtor now contends is the proper procedure:

> Debtor does not contend that all of the documents are privileged but only that the very broad demand clearly includes privileged materials. The proper procedure here would be to produce non-privileged materials and provide a privilege log as to documents withheld on grounds of privilege. If there remains a dispute the Court can inspect the disputed documents *in camera.*

Motion for Reconsideration, pp. 3–4 (Doc. 115).

Although Debtor now contends that is the proper procedure, in response to the undersigned's email, Debtor flatly rejected that proposal, stating "Actually, Trent, I intend to object to the Rule 2004 order and request a hearing pursuant to the LBR." *See* Exhibit 1, p. 1.

Regardless of how we got here, it does not appear that there is an actual dispute as to the proper procedure. The Trustee agrees that the Greear firm should produce all documents for which a privilege is not claimed and provide a privilege log for all the documents for which a privilege is claimed. Then, if there remains a dispute, the documents subject to such a dispute can be submitted by the Greear firm to the Court for an *in camera* review, as suggested by Debtor.

If the Court adopts the agreed upon procedure, there is no need for additional argument at this point. However, out of an abundance of caution, the Trustee provides some discussion, below, as to why the Trustee does, in fact, hold the right to waive any privilege associated with the Greear firm's representation of Debtor and, even if the Trustee does not hold such right, Debtor's communications with the Greear firm may not be privileged because of the crime-fraud exception to the attorney-client privilege.

## II. THE TRUSTEE HOLDS THE PRIVILEGE.

Debtor correctly cites *CFTC v. Weintraub*, 471 U.S. 343 (1985), as the preeminent case on the treatment of the attorney-client privilege in corporate bankruptcies. *See* Motion for Reconsideration, pp. 2–3 (Doc. 115). Debtor distinguishes that case, but does not cite or discuss any authority that he believes applies. To the extent the Debtor meant to suggest that the Court should infer from *Weintraub* that the trustee in a personal bankruptcy is not entitled to hold and waive the Debtor's privilege, he is mistaken.

Whereas the trustee automatically controls the privilege in a corporate bankruptcy under *Weintraub*, the majority of courts permit a personal bankruptcy trustee to also hold and waive a debtor's privilege, but only after conducting an *ad hoc* balancing of the interests at stake in that particular case. *See In re Courtney*, 372 B.R. 519, 521 (Bankr. M.D. Fla. 2007) (rejecting bright-line rules and approving the case-by-case "majority view . . ." which is the "more practical, if more unpredictable, approach."). This rule has its roots in *Moore v. Eason (In re Bazemore)*, 216 B.R. 1020 (Bankr. S.D. Ga. 1998), which, finding absolute rules unnecessarily ridged, concluded that the privilege determination "requires balancing the interests of a full and frank discussion in the attorney-client relationship and the harm to the debtor upon a disclosure with the trustee's duty to maximize the value of the debtor's estate and represent the interests of the estate." *Id.* at 1023–24.

There is no controlling Ninth Circuit authority on this topic, but the only high court to address the issue likewise rejected absolute rules in favor of a case-by-case inquiry. *See In re Foster*, 188 F.3d 1259, 1268 (10th Cir. 1999) (criticizing the lower court for failing to conduct a *Bazemore* balancing test); *see also* Ralph McCullough, et al., *Trustees: The Ability to Waive the Debtor's Attorney-Client Privilege*, 106 Com. L.J. 1, 20 (Spring 2001) ("all bankruptcy courts have begun to heed the trend started by *In re Bazemore* . . . ."); *In re Bame*, 251 B.R. 367 (Bankr. D. Minn. 2000) (adopting *Bazemore* because it aligns with Eight Circuit precedent requiring a case-by-case analysis of attorney-client privilege issues); *cf. Lewis v. U.S.*, 517 F.2d 236, 238 n. 4 (9th Cir. 1975) ("the courts should continue to develop the federal common law of privilege on a case-by-case basis." (internal citations omitted)). Thus, it is likely that the Ninth Circuit would follow the modern trend and join the majority of jurisdictions that have adopted a balancing test.

As noted above, this weighing of interests is likely premature at this juncture, because this issue may be vitiated by Mr. Greear's production of unprivileged materials, and even if it is not, a meaningful examination of this issue will depend upon the content of Greear's privilege log.

Nonetheless, based upon the information presently available, the Trustee maintains that *Bazemore* favors a finding that the Trustee should control, and if he deems it appropriate, waive the attorney-client privilege as to Debtor's communications with counsel. The primary factor favoring a trustee's assumption of the privilege in an individual bankruptcy is "the trustee's need for information,"

*Foster*, 188 F.3d at 1268, that would allow him to fulfill his "duty to maximize the value [of the debtor's estate] and represent the interests of the estate." *Id*. at 1265 (quoting *Bazemore*, 216 B.R. at 1024 (internal citations omitted)). In this case, Debtor has constructed a complex web of entities to hide assets from legitimate creditors, seemingly upon the advice of, and with the assistance of, counsel. To untangle that web and achieve any kind of fair resolution, the Trustee must have access to Debtor's legal files and communications with his attorney regarding his efforts to protect assets.

Debtor has engaged in a massive effort to hide his assets from creditors. To accomplish this, Debtor, beginning in 2007, engaged the services of Mr. Greear to assist Debtor in his asset protection scheme. In furtherance of this effort, Debtor created and used numerous entities and trusts which he owned and/or controlled to move assets out of his personal name and into the name of various entities. Debtor testified that he engaged in this effort for the purpose of protecting assets from creditors.

On its face, Debtor's scheme was successful. Although Debtor routinely made multiple millions of dollars per year and, as recently as May 11, 2012, claimed to have a net worth of over $8 million, *see* Personal Financial Statement (Exhibit 3, hereto), Debtor recently filed bankruptcy claiming virtually no unencumbered assets. Debtor accomplished this disappearing act by transferring virtually all of his personal assets out to entities owned and/or controlled by him.

Debtor recently testified that Mr. Greear advised him on the formation of every such entity and on the transfers of every asset to or between these entities. For example, attached hereto as Exhibit 4 are the Minutes of the Joint Meeting of Schneider Management, LLC and Schneider Limited Partnership, dated May 1, 2012 (the "Minutes").[1] This document is a blueprint for a portion of Debtor's scheme to hide assets from creditors. Specifically, it discusses the formation of three irrevocable trusts for Debtor's children and MedPort, LLC, and the plan to transfer Debtor's assets to such entities. Based on current information available to Trustee, Debtor has transferred millions of dollars in assets to the trusts and MedPort, and now uses MedPort to pay the personal living expenses of his family. Notably, Michael Greear was present during this meeting and provided advice on the planned transfers.

Given the massive amount of assets that Debtor has transferred through his various entities in an effort to protect such assets from creditors, and given that Mr. Greear advised Debtor on all such efforts, it is imperative that Trustee have access to these files and communications in order to fully analyze the complex web of entities and transfers, and the reasons for such, to ensure a proper recovery for unsecured creditors.

## III.  THE CRIME-FRAUD EXCEPTION MAY APPLY.

Even if this Court were to find that the Trustee does not hold the privilege and the subject documents are not property of the bankruptcy estate, the subject

---

[1] This document is incomplete, as Debtor has only produced the first two pages.

documents may not be within the realm of documents protected by the attorney-client privilege due to the crime-fraud exception.

The advice sought by Debtor from Mr. Greear, by his own admission, was for the purpose of hiding assets from creditors.  The United States Supreme Court has explained that "[i]t is the purpose of the crime-fraud exception to the attorney-client privilege to assure that the 'seal of secrecy,' *ibid.*, between the lawyer and client does not extend to communications 'made for the purpose of getting advice for the commission of a fraud . . . .'"  *U.S. v. Zolin*, 491 U.S. 554, 563, 109 S.Ct. 2619, 2626 (1989).  The court further explained that the "attorney-client privilege must necessarily protect the confidences of wrongdoers, but the reason for that protection – the centrality of open client and attorney communication to the proper functioning of our adversary system of justice – 'ceases to operate at a certain point, namely, where the desired advice refers *not to prior wrongdoing,* but to future wrongdoing.'"  *Id.* (quoting 8 Wigmore, § 2298, p. 573).

Here, Debtor's communications with Mr. Greear may fall within the definition of the crime-fraud exception.  Specifically, it appears he engaged Mr. Greear "for the purpose of getting advice for the commission of a fraud," *Zolin, supra*, i.*e.,* for the purpose of hiding his assets from legitimate creditors.  "Communications between an attorney and client are not protected if they are part of a fraudulent scheme to conceal assets from creditors." *In re GGW Brands, LLC*, 504 B.R. 577, 589 n. 13 (Bankr. C.D. Cal. 2013) (citing *U.S. v. Ballard*, 779 F.2d 287, 293 (5th Cir. 1986)).

An *in camera* review by the Court is the proper method to answer this question.

DATED this 1st day of April, 2015.

>GOETZ, BALDWIN & GEDDES, P.C.
>
>By: */s/Trent M. Gardner*
>Trent M. Gardner/Jeffrey J. Tierney
>Attorneys for Trustee Joseph V. Womack

## CERTIFICATE OF SERVICE

The undersigned hereby certifies under penalty of perjury that on April 1, 2015, a copy of the foregoing pleading was served (i) by electronic means pursuant to LBR 9013-1(d)(2) on the parties noted in the Court's ECF transmission facilities and/or (ii) by mail on the following parties: None.

>*/s/Trent M. Gardner*
>Trent M. Gardner
>Attorneys for Trustee Joseph V. Womack