

# AMERICAN ARBITRATION ASSOCIATION

STEPHEN F. EMERY M.D. and BEARTOOTH
ORTHOPAEDIC AND SPINE, P.C., JAY
WINZENRIED, M.D., ABSAROKA
ORTHOPAEDICS, BIG HORN BASIN
BONE AND JOINT, LLC, FRANK
SCHMIDT, M.D. JOHN SCHNEIDER, M.D.,
SCHNEIDER LIMITED PARTNERSHIP,
SCHNEIDER MANAGEMENT, LLC,
ANDREW BAKER, and DANIEL MATTSON,

     *Claimants,*

v.

MERIDIAN SURGICAL PARTNERS, LLC and
MERIDIAN SURGICAL PARTNERS –
MONTANA, LLC

     *Respondents.*

## CLAIMANTS' JOINT DEMAND FOR ARBITRATION

Claimants respectfully submit this Demand for Arbitration under the American

Arbitration Association's Commercial Arbitration Rules and Procedures for Large, Complex

Commercial Disputes (Rules Amended and Effective October 1, 2013). This case is the result of

the consolidation of AAA case no. 65-193-Y-00026-14 and AAA case no. 65-193-Y-00139-13.

This demand is a joint amendment and restatement of the claims and counterclaims made in the

previous cases.

## PARTIES

The parties to this dispute are as follows:

CLAIMANTS:

Stephen F. Emery, M.D.
and, as applicable, Beartooth Orthopaedic and Spine, P.C.
720 Lindsay Lane, Suite C
Cody, Wyoming 82414
Phone: (307) 578-1955
Fax: (307) 578-1979

Jay Winzenried, M.D.
and, as applicable, Absaroka Orthopaedics
424 Yellowstone Ave Suite 140
Cody, Wyoming 82414
Phone: (307) 527-7100
Fax: (307) 527-7145

Big Horn Basin Bone and Joint, LLC
720 Lindsay Lane, Suite C
Cody, Wyoming 82414
Phone: (307) 578-1955
Fax: (307) 578-1979

John Schneider, M.D.
Schneider Limited Partnership
Schneider Management, LLC
1962 Road 15
Powell, Wyoming 82435

Andrew Baker
1766 Eaglenest Trail
Powell, WY 82435
Phone: (307) 254-1001

Daniel Mattson
3111 Avenue E
Billings, MT 59102
Phone: (406)-252-8500

CLAIMANTS' REPRESENTATIVES:

Laurence W. Stinson
Stinson Law Group, PC
1421 Rumsey Avenue
Cody, WY 82414
Phone: (307) 587-0300
Fax: (307) 527-6092
Email: laurence@stinsonlawyers.com

Attorneys for Emery, Winzenried, and Schmidt

Jim Ragain
Ragain Law Firm
3639 Ave. B, Ste A2
Billings, MT 59102
Phone: (406) 651-8888
Fax: (406) 651-8889
Email: jim@ragainlawfirm.com

Attorneys for Emery, Winzenried, and Schmidt

Kenneth S. Frazier
Burt N. Hurwitz
Ryan P. Browne
Felt, Martin, Frazier & Weldon, P.C.
208 North Broadway, Suite 313
P.O. Box 2558
Billings, Montana 59103
Phone: (406) 248-7646
Fax: (406) 248-5485
Email: kfrazier@feltmartinlaw.com; bhurwitz@feltmartinlaw.com;
rbrowne@feltmartinlaw.com

Attorneys for the Schneider Parties and Baker

John M. Van Atta
Patten, Peterman, Bekkedahl & Green, PLLC
2817 Second Ave. N., Suite 300
Billings, MT 59101
Phone: (406) 252-8500
Fax: (406) 294-9500
Email: jvanatta@ppbglaw.com

Attorneys for Mattson

RESPONDENTS:

>Meridian Surgical Partners – Montana, LLC
>5141 Virginia Way, Suite 420
>Brentwood, Tennessee 37027

>Meridian Surgical Partners, LLC
>5141 Virginia Way, Suite 420
>Brentwood, Tennessee 37027

RESPONDENTS' REPRESENTATIVE:

>E. Steele Clayton, IV
>J. Taylor Chenery
>Bass Berry & Sims PLC
>150 Third Avenue South, Suite 280
>Nashville, Tennessee 37201
>Phone: (615) 742-6200
>Fax: (615) 742-2705
>Email: sclayton@bassberry.com

## STATEMENT OF CLAIM

1.     This dispute arises from a failed venture that would have established and operated an ambulatory surgical center ("ASC") in or near Billings, Montana.

2.     The Claimants, individually and/or through separate business entities, are medical providers who invested in and would have seen patients at the proposed ASC.

3.     Respondent Meridian Surgical Partners, LLC ("MSP") is a company that provides development and management services related to ASCs around the country.

4.     MSP advised the Claimants and formed Orthopaedic Neuro Institute Surgical Center, LLC ("ONI LLC"), a Delaware limited liability company for the purpose of establishing and operating an ambulatory surgery center in Billings, Montana.  See the *Operating Agreement* attached hereto as Exhibit "1".  Claimant Mattson subsequently joined as an investor after

organization and formation of ONI, LLC and moved with his family from Butte, Montana to Billings, Montana, for the purpose of treating patients at the proposed ASC.

5.       MSP created and distributed the Private Offering Memorandum to recruit investors and raise capital for the surgical center.

6.       Prior to the formation of ONI LLC, Meridian Surgical Partners, LLC, ("MSP"), through members of its management team, met with Dr. Schneider, Dr. Schmidt, Dr. Emery, and Dr. Winzenreid.  In the many communications that ensued, MSP were consistently advised by these physician investors that none was willing to take call in Billings, Montana, and none had privileges at the local hospitals in Billings, Montana.

7.       Prior to the formation of ONI LLC, MSP was aware that Dr. Schneider, Dr. Schmidt, Dr. Emery, and Dr. Winzenreid did not live in Billings, Montana.  Rather, they lived in Wyoming, more than 100 miles from Billings, Montana.

8.       It was represented to all physician investors that MSP would handle licensure and credentialing and that it would not be necessary for any physician investor to obtain privileges at a Billings hospital or take call at a Billings hospital.

9.       MSP formed Meridian Surgical Partners – Montana, LLC, ("MSPM") as a wholly owned subsidiary of MSP.

10.      On the same day that the parties entered into the ONI LLC operating agreement, the parties executed a Management Services Agreement designating MSPM as the management company for ONI LLC.  See the *Management Services Agreement* attached as Exhibit "2".

11.      MSPM was to manage and administer the business functions of the ASC.

12.     MSPM included all or most of the MSP senior personnel including Buddy Bacon, Kenny Hancock, John Wilson, Katherine Kowalski, and others.  The foregoing individuals were all employed by MSP.

13.     MSPM was to coordinate all reasonable and necessary actions to procure and maintain all licenses, permits, and certificates required for the operation of the ASC, and to ensure that all appropriate certification and accreditation available to the ASC's operations were obtained.

14.     MSP, or their representatives, orchestrated and handled the formation of ONI LLC.  MSP was responsible for drafting and preparing the entity formation documents of ONI LLC, including the Operating Agreement and the Management Services Agreement.

15.     The ONI LLC entity formation documents do not anticipate and/or specify that the physician investors would need to obtain privileges (which would also require the taking of call) at any Billings hospital.

16.     The parties, through other entities, and directed by MSP and MSPM, moved forward with the acquisition of real estate and construction of a multi-million dollar ASC facility based on the representations of MSP that it would handle all licensure, certification, and accreditation to open and operate the ASC.

17.     MSP and the MSPM understood prior to construction of the ASC what Montana and federal licensure and certification was necessary to operate the ASC.

18.     Prior to, during, and following construction, MSP marketed itself as having experience and a specialty in surgical center business management and surgical center operation. MSP represented, explicitly and impliedly, that it would handle licensure, certification, and accreditation to open and operate the surgical center.

19.     MSP and MSPM failed to obtain appropriate licensure and certification for the ASC.

20.     Among other failures, MSP and MSPM failed to secure commitments for the necessary transfer agreement from a local acute care hospital, and any other licenses in advance of recommending a multi-million build of the surgical center property and investment into surgical center equipment; failed to make any diligent or focused inquiry into licensure to operate the surgical center in advance of construction in order to coordinate and maintain licensure; failed to obtain a transfer agreement or necessary licensure while the surgical center was being built; failed to obtain licensure necessary to operate the surgical center following construction; failed to honestly and timely communicate to the physician investors that necessary steps to open and operate the surgical center were not taken in advance of construction and not diligently pursued during construction; failed to take effective mitigation measures.

21.     MSP and MSPM inaccurately and falsely blamed the legal problems of Dr. John Schneider as the cause for the ASC's failure to open and operate.  However, just weeks earlier MSP and MSPM claimed that the local Billings hospitals were engaged in unlawful antitrust activity and that was the reason a transfer agreement was not obtained; at that time, no blame whatsoever was attributed to Dr. Schneider.

22.     In fact, it appears that MSP and MSPM failed to exercise due care in securing the necessary accreditation, licensure, and certifications for operating the surgery center. Respondents intentionally concealed their inability to comply with state licensing requirements for opening and operating the ASC.

23.     In the formation stage, MSP and/or MSPM promoted its self-interest at the expense of ONI LLC's other members, including the Claimants.

24.     Respondents intentionally misrepresented facts, including but not limited to their knowledge, skills, and abilities, in order to induce the Claimants to organize and invest in ONI LLC.

25.     MSP and/or MSPM failed to take necessary steps to license, certify, open, operate and manage the ASC and ONI, LLC.

26.     MSP assumed the duties and obligations of MSPM under the ONI LLC entity formation documents and the management services agreement.  MSP, and not MSPM, handled all negotiation, all document preparation, all licensure and certification communication, and provided all management personnel, which personnel are on the MSP management team.  When it finally disclosed its failure to obtain licensure, it was MSP, and not MSPM, that communicated with the Claimants and it was and is MSP that continues to communicate with the Claimants regarding any surgery center business.

27.     The company veil of MSPM must be and should be pierced and direct responsibility, liability, and culpability charged to MSP.

28.     MSP and MSPM breached their express and implied duties under these agreements.  MSP breached the express and implied provisions of the Operating Agreement and the Management Services Agreement to manage the ASC, to coordinate and maintain licensure for the ASC, and to ensure all accreditations and certifications for the ASC by failing to obtain licensure.

29.     MSP and MSPM both stood in a unique and special relationship to claimants and that relationship required fiduciary, good faith, loyalty and trust duties which duties both relate to the Management Services Agreement and the ONI LLC agreements and are also independent of those agreements and imposed by Delaware law.  MSP and MSPM breached these obligations to

Claimants by failing to act promptly and diligently; failing to timely advise the Claimants that licensure, or the commitment for licensure, had not been obtained in advance of construction, and/or that MSP and MSPM was not qualified to make such a determination in the State of Montana.   Further, MSP and MSPM breached this duty by failing to secure the necessary licensure to operate the ASC.

30.   Respondents breached the implied duty of good faith and fair dealing.  In the context of arbitration, MSPM (and MSP who had assumed the duties of MSPM) breached the duty of good faith by failing to fully and accurately advise claimants of its failure to research, understand, and secure licensure to operate the surgery center in advance of construction and, thereafter, failure to fully and honestly advise claimants as to the efforts and lack of progress with securing licensure.

31.   MSPM (and MSP who had assumed the duties of MSPM) engaged in bad faith, and in doing so breached the duty of good faith, by claiming that it was not necessary that MSP or MSPM secure a transfer agreement and insisting the claimants, or their physicians, obtain privileges at a Billings acute care hospital.

32.   MSPM (and MSP who had assumed the duties of MSPM) and MSP further engaged in bad faith, and in doing so breached the duty of good faith, by failing to act to open the ASC when Big Horn Basin Bone and Joint, LLC, physician Frank Schmidt did obtain privileges in Billings.  Despite Dr. Schmidt obtaining privileges as demanded by MSP (acting for itself and MSPM), neither MSP nor MSPM managed the center so as to open and operate it.

33.   Respondent MSPM breached its fiduciary duty to Claimant minority members, and further breached its duty of care and loyalty.

34.    Respondent MSPM's acts and omissions constitute a bad faith violation of the implied contractual covenant of good faith and fair dealing.

35.    The acts and omissions of MSP, independently and as agent for MSPM, constitute willful misconduct.

36.    Respondents breached Delaware law concerning the duties it owed to Claimants.

37.    Generally, the Claimants assert the following claims against Respondents as applicable, in the context of this arbitration:

1)    Breach of the express provisions of the Operating Agreement and the Management Services Agreement referenced therein;
2)    Breach of the implied provisions of the Operating Agreement and the Management Services Agreement referenced therein;
3)    Breach of the Operating Agreement and the Management Services Agreement referenced therein by failure to perform;
4)    Breach of fiduciary duty;
5)    Breach of the implied covenant of good faith and fair dealing;
6)    Promissory estoppel;
7)    Intentional misrepresentation;
8)    Negligent misrepresentation;
9)    Fraudulent concealment;
10)   Fraudulent inducement;
11)   Breach of duty of care;
12)   Breach of the duty of loyalty; and
13)   Constructive fraud.

38.    Claimants advise that their intent in this arbitration is to bring arbitable claims which stem against MSPM and/or MSP by virtue of the MSP's conduct and assumption by conduct of the obligations of MSPM. Claimants Winzenreid, Emery, and Big Horn Basin Bone and Joint, P.C., further advise that their at-law claims against MSP for its independent conduct have been brought in the United States District Court for the District of Montana.

## LIMITED AGREEMENT TO ARBITRATE

Pursuant to Section 13.11(c) of the Operating Agreement, and Section 8.3 of the Management Services Agreement, the parties have agreed to arbitrate "[a]ll disputes with respect to the interpretation of the provisions" of these agreements.  As noted, certain Claimants have determined that extra-contractual claims, or claims fraud, should be adjudicated at law.

## RELIEF SOUGHT AND AMOUNT INVOLVED

Claimants seek all relief and damages to which they are entitled under the law, including but not limited to compensatory and incidental damages totaling at least the amounts set forth below:

STEPHEN F. EMERY, M.D. and BEARTOOTH ORTHOPAEDIC AND SPINE, P.C.:
ORTHOPAEDIC NEURO INSTITUTE SURGICAL CENTER, LLC

| | |
|---|---|
| CAPITAL CONTRIBUTION | $120,000 |
| LOAN GUARANTEE | $235,807 |
| LOSS OF INCOME | $574,446 |

ONI REALTY INVESTORS, LLC

| | |
|---|---|
| CAPITAL CONTRIBUTION BALANCE | $67,272 |
| LOAN GUARANTEE | $169,657 |

OMNI ORTHOPEDICS, LLC

| | |
|---|---|
| CAPITAL CONTRIBUTION | $69,700 |
| LOAN GUARANTEE | $24,518 |

OPERATING EXPENSES FOR BILLINGS SURGERY OFFICE:

| | |
|---|---|
| ADVERTISING | $9,195 |
| PROFESSIONAL FEES | $12,528 |

**EMERY GRAND TOTAL**                                         **$1,277,123.00**

**JAY WINZENRIED, M.D. GRAND TOTAL:**                 **$771,795.40**

BIG HORN BASIN BONE AND JOINT, LLC:

ORTHOPAEDIC NEURO INSTITUTE SURGICAL CENTER, LLC

| | |
|---|---|
| CAPITAL CONTRIBUTION | $120,000 |
| LOAN GUARANTEE | $235,807 |

| | |
|---|---|
| LOSS OF INCOME | $574,446 |

ONI REALTY INVESTORS, LLC

| | |
|---|---|
| CAPITAL CONTRIBUTION BALANCE | $67,272 |
| LOAN GUARANTEE | $169,657 |

OMNI ORTHOPEDICS, LLC

| | |
|---|---|
| CAPITAL CONTRIBUTION | $69,700 |
| LOAN GUARANTEE | $24,518 |

OPERATING EXPENSES FOR BILLINGS SURGERY OFFICE:

| | |
|---|---|
| PHYSICIANS ASSISTANT | $95,474 |
| SECRETARY | $22,959 |
| PAYROLL TAXES | $4,421 |
| BENEFITS | $9,531 |
| ADVERTISING | $47,123 |
| OFFICE EQUIPMENT | $7,894 |
| TRAVEL & MEALS | $4,584 |
| LICENSE AND FEES | $1,947 |
| COMPUTER/INTERNET EXPENSES | $1,349 |
| PROFESSIONAL FEES | $28,210 |
| X-RAY EXPENSE | $2,505 |

**BHBB&J GRAND TOTAL**                    **$1,481,398.00**

JOHN SCHNEIDER, M.D., SCHNEIDER LIMITED PARTNERSHIP, SCHNEIDER MANAGEMENT, LLC:

The Schneider Claimants assert they have been damaged by the Respondents in the minimum amount of $15,000,000.00 plus all additional amounts to be proven at the arbitration hearing including, but not limited to, consideration paid for securities, capital contributions, contribution for guarantees of Respondents' obligations, lost income, damages from lost opportunity, punitive damages, costs, and attorneys' fees.

**SCHNEIDER TOTAL**                    **$15,000,000.00**

ANDREW BAKER:

Claimant Baker asserts he has been damaged by the Respondents in the minimum amount of $1,000,000.00 plus all additional amounts to be proven at the arbitration hearing including, but

not limited to, consideration paid for securities, capital contributions, contribution for guarantees of Respondents' obligations, lost income, damages from lost opportunity, punitive damages, costs, and attorneys' fees.

**BAKER TOTAL**                                        **$1,000,000.00**

DANIEL MATTSON:

| | |
|---|---|
| CAPITAL CONTRIBUTION | $60,000 |
| DEBT LIABILITY | $151,000 |
| LOST INCOME | $805,000 |
| CONSEQUENTIAL DAMAGES | $34,000 |

**MATTSON TOTAL**                                        **$1,050,000**

Claimants reserve the right to alter, amend, and/or supplement their damages to include additional amounts identified as losses or costs through updated research, discovery, or expert involvement and disclosures.

In accordance with the Operating Agreement, Claimants also seek all costs, expenses, and attorney's fees incurred in this action.

## HEARING LOCATION

Pursuant to the above-referenced agreements to arbitrate, the arbitration hearing is to occur in Minneapolis, Minnesota. Claimants jointly request that the arbitration venue be transferred to Billings, Montana, because the majority of parties and witnesses reside therein or close thereto.

WHEREFORE the Claimants respectfully submit this Joint Demand for Arbitration and Statement of Claims.

DATED this _8th_ day of September, 2014.

> FELT, MARTIN, FRAZIER & WELDON, P.C.
> ATTORNEYS FOR SCHNEIDER CLAIMANTS AND
> ANDREW BAKER
>
> By: _____
> Kenneth S. Frazier
> Burt N. Hurwitz
> Ryan R. Browne

DATED this ⁄ day of September, 2014.

PATTEN, PETERMAN, BEKKEDAHL & GREEN, PLLC
ATTORNEYS FOR CLAIMANT DANIEL MATTSON

By: _____

John M. Van Atta

DATED this _____ day of September, 2014.

RAGAIN LAW FIRM
ATTORNEYS FOR CLAIMANTS EMERY, WINZENRIED
& SCHMIDT

By: _____
   Jim Ragain

DATED this _____ day of September, 2014.

STINSON LAW GROUP, PC
ATTORNEYS FOR CLAIMANTS EMERY, WINZENRIED
& SCHMIDT

By: _____
    Laurence W. Stinson

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 8th day of September 2014, a copy of the foregoing document was duly served via electronic-mail upon the following:

E. Steele Clayton
J. Taylor Chenery
BASS, BERRY & SIMS PLC
150 Third Avenue South, Suite 2800
Nashville, Tennessee 37201
sclayton@bassberry.com
tchenery@bassberry.com

for Felt, Martin, Frazier & Weldon, P.C.