Trent M. Gardner (I.D. # 7477)
Jeffrey J. Tierney (I.D. # 12989)
**GOETZ, BALDWIN & GEDDES, P.C.**
35 North Grand
P.O. Box 6580
Bozeman, MT  59771-6580
Phone: (406) 587-0618
Fax:   (406) 587-5144
Email: tgardner@goetzlawfirm.com
          jtierney@goetzlawfirm.com

Joseph V. Womack (I.D. # 2641)
**WALLER & WOMACK, P.C.**
303 North Broadway, Suite 805
Billings, Montana 59101
Telephone:  (406) 252-7200
Facsimile: (406) 252-4266
Email: jwomack@jvwlaw.com

Attorneys for Joseph V. Womack, Trustee

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MONTANA

In re

**JOHN HENRY SCHNEIDER**,

Debtor.

Case No. 14-61357

MOTION FOR APPROVAL OF COMPROMISE SETTLEMENT

Joseph V. Womack (the "Trustee"), Chapter 7 Trustee of the bankruptcy estate of John Henry Schneider (the "Estate"), through counsel, hereby moves the Court for an Order, pursuant

to Bankruptcy Rule 9019, approving the Settlement Agreement and Release (the "Settlement Agreement") between Trustee and Kathleen T. Burrows ("Burrows").[1]

The Settlement Agreement resolves Adversary Proceeding Nos. 15-00008 (the "Molt Property AP") and 15-00015 (the "Alter Ego AP"), solely as the Alter Ego AP pertains to Burrows. The basic terms of the settlement are as follows:

a. Burrows will pay to the Estate $75,000.00;

b. Burrows releases all claims against Trustee, the Estate and property of the Estate;

c. Trustee, on behalf of the Estate, releases all claims against Burrows, with prejudice, and shall dismiss the Molt Property AP with prejudice and the claims in the Alter Ego AP against Burrows with prejudice; and

d. Burrows agrees to fully cooperate with Trustee's investigation and pursuit of claims on behalf of the Estate.

The Trustee moves for an order:

a. Approving the Settlement Agreement and authorizing the Trustee to execute such agreements and instruments required to effect settlement under the Agreement without further proceedings; and

b. Granting such other and further relief as the Court deems proper.

## FACTUAL BACKGROUND

The Settlement Agreement resolves the Estate's claims against Burrows related to her involvement with Debtor and Debtor's attempt to hide assets.

The Trustee's primary claim against Burrows is that she received a property from Debtor in 2012, the Molt Property, for which she provided no consideration. Thus, Trustee filed the Molt Property AP to recover the funds from the eventual sale of the Molt Property as a

---

[1] The Settlement Agreement is attached hereto as Exhibit 1.

fraudulent transfer.  Burrows was also named as a defendant in the Alter Ego AP.  The Alter Ego AP seeks to undo Debtor's massive scheme to hide assets from creditors and to recover numerous assets for the Estate.  Burrows was named as a defendant because Debtor had named her as a manager/trustee of various of the entities which are targets of the Alter Ego AP.

The Trustee's investigation revealed that Burrows had sold the Molt Property for $325,000.00 in 2013.  After commissions and closing costs, Burrows netted approximately $296,000 from the sale. However, the investigation also revealed that Burrows had an agreement with Debtor, her brother, that she would keep $150,000 of the proceeds and all remaining proceeds would be Debtor's property.  Burrows contends that the $150,000 was payment for services she performed for various of Debtor's entities.

After the sale of the Molt Property, Debtor asked Burrows to open a separate account, in her name, to hold the proceeds of the sale which were actually Debtor's property.  Burrows understood that this request was made because Debtor wanted to keep the funds a secret.  Burrows complied with her brother's request, and opened an account at US Bank for him.  In addition to the $146,000, Debtor deposited an additional $393,736.22 of his funds into the bank account.

Debtor then had full control over the funds in the US Bank Account, routinely using the ATM card to make repeated $1,000 cash withdrawals and using the funds to pay personal expenses.  In May of 2014, Debtor instructed Burrows to write a check to Michelle Schneider, debtor's wife, for $100,000, from the account. Burrows complied with that request.  In February of 2015, Burrows informed Debtor that he needed to disclose the US Bank Account in his bankruptcy.  Debtor informed Burrows that he had disclosed the funds.  That representation was false.  Burrows then informed Debtor that she did not want to hold his funds any further.  At

Debtor's request, Burrows closed the US Bank Account and transferred the remaining $305,045.50 to an account in Michelle Schneider's name. The Trustee is pursuing these transfers to Michelle Schneider in the Alter Ego AP.

The Trustee's investigation also revealed that Burrows was the manager and trustee of various of the target entities in name only. Debtor used Burrows as a pawn to try to create the illusion of separateness between him and the entities when, in fact, he was in control of everything.

The Trustee believes that this Settlement, which recovers sums for unsecured creditors and will assist the Trustee's efforts to investigate and pursue other claims, is in the best interest of creditors and the Estate.

## LEGAL AUTHORITY AND ARGUMENT

### I. THE SETTLEMENT SHOULD BE APPROVED.

Bankruptcy Rule 9019(a) gives this Court broad authority to approve a compromise or settlement. This Court has discussed the standards for approval of the compromise of a claim in a matter arising in the Yellowstone Club Cases (Case No. 08-61570-11):

> As discussed in *Martin v. Kane (In re A & C Properties)*, 784 F.2d 1377, 1380-81 (9th Cir. 1986), in determining the fairness, reasonableness and adequacy of a proposed settlement agreement, the court must consider:
>
>> (a) the probability of success in the litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; (d) the paramount interest of the creditors and a proper deference to their reasonable views in the premises.
>
> *See also In re Michael*, 14 Mont. B.R. 363, 365 (1995) (construing *In re A & C Properties*).

(Case no. 08-61570-11, Dkt. 1318, p.5).

In determining whether to approve a proposed settlement, the bankruptcy court does not need to substitute its judgment for that of the settlement's proponents. It just needs to determine if the settlement falls below a standard of reasonableness. An independent investigation into the underlying dispute is not required. *In re Walsh Constr. Inc.*, 669 F.2d 1325, 1328 (9th Cir. 1982). The Court may weigh the opinions of the trustee, the parties, and their attorneys, as to the appropriateness of the settlement and that the settlement is the wisest course. *In re Blair*, 538 F.2d 849, 851 (9th Cir. 1976).

The Ninth Circuit has noted that "a court generally gives deference to a trustee's business judgment in deciding whether to settle a matter" subject only to "proof that the compromise is fair and equitable and should be approved." *In re Mickey Thompson Entertainment Group, Inc.*, 292 B.R. 415, 420 (9th Cir. BAP 2003). Each of the four factors is discussed, below.

### A. Probability of Success on the Merits.

The Trustee believes he has a strong case for fraudulent transfer against Burrows as it relates to the $150,000 she retained from the sale of the Molt Property. There was no consideration given for the transfer and it was within the statute of limitations for fraudulent transfer claims. However, Burrows contends that the money was payment for services she provided to various of Debtor's entities. Burrows' argument creates an interesting legal question as she undoubtedly provided services, but the services were provided to certain entities, not to the Debtor, individually. Further, the value of such services is an open question. In any event, while the Trustee believes he has a strong case, there is certainly some uncertainty.

The probability of success on the merits favors settlement.

### B. Difficulties in Collecting.

The Trustee believes there could be substantial difficulty in collecting any substantial resulting judgment from Burrows. Burrows has represented that she has limited or no income and that her husband is on social security. Burrows has also represented that the cost of ongoing litigation would likely drive her into bankruptcy. Trustee has reviewed sworn financial statements concerning these claims.

The Trustee is convinced that there is a strong likelihood that, if this litigation against Burrows were to proceed to judgment, Trustee would have substantial difficulty ultimately collecting more than the agreed upon settlement amount.

### C. Complexity, Delay and Expense of Continuing Litigation.

The litigation against Burrows would be time-consuming and extremely expensive. There are myriad issues and complicated legal theories that could take years to litigate. Further, as explained above, Trustee believes that lengthy and expensive litigation could drain Burrows' assets and prevent a recovery because of her inability to pay.

The Trustee believes that this settlement is prudent because it guarantees the Estate $75,000.

### D. Interest of Creditors.

The Trustee believes that the interest of the Estate's creditors is best served by this settlement. The Settlement provides a guaranteed $75,000 to the Estate. Although the Trustee may ultimately obtain a larger judgment than that against Burrows, the probability of collecting more than the settlement amount is low.

Thus, the Trustee firmly believes that the creditors of the Estate are best-served by this settlement.

## CONCLUSION

In sum, the Trustee and the other parties believe this is a fair settlement which is in the best interest of the Estate. Therefore, the Trustee respectfully requests the Motion be granted.

DATED this 23rd day of July, 2015.

GOETZ, BALDWIN & GEDDES, P.C.

By: */s/Trent M. Gardner*
Trent M. Gardner/Jeffrey J. Tierney
Attorneys for Trustee Joseph V. Womack

## CERTIFICATE OF SERVICE

The undersigned hereby certifies under penalty of perjury that on July 23, 2015, a copy of the foregoing pleading was served (i) by electronic means pursuant to LBR 9013-1(d)(2) on the parties noted in the Court's ECF transmission facilities and/or (ii) by mail on the following parties: None.

*/s/Trent M. Gardner*
Trent M. Gardner
Attorneys for Trustee Joseph V. Womack

## NOTICE OF OPPORTUNITY TO RESPOND
## AND REQUEST A HEARING

If you object to the motion, you must file a written responsive pleading and request a hearing within fourteen (14) days of the date of the motion. The responding party shall schedule the hearing on the motion at least twenty-one 21 days after the date of the response and request for hearing and shall include in the caption of the responsive pleading in bold and conspicuous print the date, time and location of the hearing by inserting in the caption the following:

NOTICE OF HEARING
Date: _____
Time:_____
Location:_____

If no objections are timely filed, the Court may grant the relief requested as a failure to respond by any entity shall be deemed an admission that the relief requested should be granted.