Trent M. Gardner (I.D. # 7477)
Jeffrey J. Tierney (I.D. # 12989)
**GOETZ, BALDWIN & GEDDES, P.C.**
35 North Grand
P.O. Box 6580
Bozeman, MT  59771-6580
Phone: (406) 587-0618
Fax:     (406) 587-5144
Email: tgardner@goetzlawfirm.com
           jtierney@goetzlawfirm.com

Joseph V. Womack (I.D. # 2641)
**WALLER & WOMACK, P.C.**
303 North Broadway, Suite 805
Billings, Montana 59101
Telephone:  (406) 252-7200
Facsimile: (406) 252-4266
Email: jwomack@jvwlaw.com

Attorneys for Joseph V. Womack, Trustee

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MONTANA

| | |
|---|---|
| In re<br><br>**JOHN HENRY SCHNEIDER**,<br><br>    Debtor. | Case No. 14-61357 |

### MOTION FOR APPROVAL OF COMPROMISE SETTLEMENT, INCLUDING APPROVAL OF SALE FREE AND CLEAR

Joseph V. Womack (the "Trustee"), Chapter 7 Trustee of the bankruptcy estate of John Henry Schneider (the "Estate"), through counsel, hereby moves the Court for Orders: (1) pursuant to Bankruptcy Rule 9019, approving the Settlement Agreement and Release (the "Settlement Agreement") between Trustee and the various Defendants, including John Henry Schneider ("Debtor"), Michelle R. Schneider, Schneider Limited Partnership ("Schneider LP"),

Schneider Management, LLC ("Schneider Management"), Medport, LLC ("MedPort"), BSC, LLC ("BSC"), Michelle R. Schneider, as Trustee of the Brandon Schneider Benefit Trust, Dated March 30, 2012 (the "Brandon Trust"), Michelle R. Schneider, as Trustee of the Shannon Schneider Benefit Trust, Dated March 30, 2012 (the "Shannon Trust"), Michelle R. Schneider, as Trustee of the Caitlin Schneider Benefit Trust, Dated March 30, 2012 (the "Caitlin Trust," and together with the Brandon Trust and the Shannon Trust comprising the "Children's Trusts"); John Schneider, as Trustee of the John Schneider Revocable Trust, Dated November 20, 2007 (the "John Trust"); and Michelle R. Schneider, as Trustee of the Michelle Schneider Revocable Trust, Dated November 20, 2007 (the "Michelle Trust"); and (2) providing that the sale of the interests in Schneider Management and Schneider LP (as defined herein) are free and clear pursuant to 11 U.S.C. § 363(f).[1]

The Settlement Agreement resolves Adversary Proceeding No. 15-00015 (the "Collection AP"), and various other claims in the bankruptcy. The basic terms of the settlement are as follows:[2]

    a.    Debtor and Michelle Schneider agree to convey fee simple title to 3611 Tommy Armour Circle ("the Billings House"), including the land and all improvements thereto, and fixtures (including all appliances), but not including household goods and personalty, free and clear of all liens and encumbrances (save for property tax claims) to the Trustee. The value of the Billings House in excess of $450,000 (which is the consideration given for the settlement of AP-20, a separate and distinct settlement), constitutes consideration for the terms of this Agreement;

    b.    The Children's Trusts shall release the judgment lien they hold against the Billings House;

    c.    The Children's Trusts shall jointly convey to the Trustee fee simple title to the Wyoming Property, generally referred to as the Whispering Winds Ranch, together with all improvements, fixtures and appurtenances, but not including

---

[1] The Settlement Agreement is attached hereto as Exhibit 1.
[2] The terms contained in this Motion are a synopsis of the general terms. The Settlement Agreement contains the full terms of settlement and remains the binding document as to the terms of settlement.

Motion to Approve Compromise Settlement      Page 2

       household goods and personalty, but including all appliances, free and clear of all judgment liens, mortgages and encumbrances, other than property taxes;

    d.     MedPort shall release its mortgage against the Wyoming Property;

    e.     The Trustee shall receive $240,000.00, consisting of a combination of funds currently held in the Goetz, Baldwin & Geddes P.C. trust account and liquidation of Schneider Management's interest in KBS REIT, as more fully described in the Settlement Agreement;

    f.     Debtor and Michelle Schneider are entitled to a tax refund for the year 2014 in the amount of $123,250 (the "Tax Refund"). The Tax Refund shall be split equally between the Trustee and Michelle Schneider.

    g.     The Trustee shall convey to Michelle Schneider or her designee any and all interest the Estate might have, or claim to have, in Schneider LP and Schneider Management by way of a sale pursuant to 11 U.S.C. § 363(f).

    h.     The Trustee shall abandon any and all interest in any claims that the estate might have against the following third parties:

        i.     Claims against any third-party professionals who prepared or advised the Debtor on any matter prior to the commencement of the bankruptcy case

        ii.     Claims of Schneider LP, Schneider Management, MedPort, BSC, Northern Rockies Neuro Spine ("NRNS"), and the Children's Trusts.

        iii.     Claims against Meridian, subject to the following conditions:

            1.     Debtor agrees to fully defend in good faith all claims of Meridian against the Estate, or him individually, in the arbitration, and

            2.     Debtor agrees that, in the event the Estate's claims so-abandoned to him are settled, such settlement shall require that Meridian withdraw its proof of claim in the Schneider Bankruptcy Case;

    i.     The Trustee shall abandon any and all interest in MedPort, NRNS, and BSC.

    j.     An order of this Court that the causes of action asserted by the Trustee are all property of the Estate, to the exclusion of any creditor.

    k.     The above-listed parties agree to mutual releases of all claims, said release being subject to the following conditions:

        i.     In the event that an asset that should have been disclosed in the representations regarding assets referenced in this Agreement, or the

       Debtor's schedules, is discovered, then the Defendants to this Agreement are not released from liability with respect to claims to that asset and any costs that might be incurred in recovering said asset or its value as of the date of this Agreement from the non-disclosing party.

  ii.  In the event that any party fails to perform its obligations as set out in this agreement, then such party shall not be released with regard to its obligation to perform, or for any damages that might accrue from such failure to perform.

Based upon these terms and in order to resolve the Collection AP and remaining matters in the bankruptcy as it relates to Defendants, the Trustee moves for an order:

 a. Approving the Settlement Agreement and authorizing the Trustee to execute such agreements and instruments required to effect settlement under the Agreement without further proceedings;

 b. Confirming that the sale of the interests in Schneider Management and Schneider LP are free and clear pursuant to 11 U.S.C. § 363(f).; and

 c. Granting such other and further relief as the Court deems proper.

## FACTUAL BACKGROUND

The Settlement Agreement resolves the Estate's claims against the above-listed parties.

Debtor filed this Chapter 7 bankruptcy proceeding on December 4, 2014. In his Schedules, Debtor identified $20,938,720.78 in assets and $5,558,993.01 in liabilities. *See* Doc. 17. However, the assets identified consisted mainly of: (1) a home in Billings in which Debtor claimed no equity; (2) exempt retirement accounts; and (3) over $18 million in claims against third parties which had not been liquidated. *Id*. Thus, at the start of the case, there were essentially no readily available or undisputed assets to liquidate for the benefit of unsecured creditors.

With this starting point, the Trustee began his investigation. He first attempted to obtain counsel to represent the Estate in Debtor's $15 million claim against Meridian Healthcare. Doc. 17, p. 8. Debtor's prior counsel on that claim refused to pursue the claim on a contingency fee

basis and withdrew. The Trustee contacted numerous other attorneys about representation on the claim. No attorney would undertake representation on a contingency fee basis. Based on his unsuccessful attempts to locate counsel, and his independent assessment of the claim, the Trustee concluded that Debtor's claim against Meridian had little potential to bring value to the Estate.

The Trustee then began investigating other potential sources of funds or assets which could possibly be brought into the Estate. Through this investigation, the Trustee discovered numerous entities through which the Trustee alleges the Debtor attempted to hide assets from his creditors, a claim which the Debtor and the involved entities vigorously dispute. Based on this investigation, the Trustee filed Adversary Proceeding No. 15-00015, the "Collection AP." The First Amended Complaint in the Collection AP (Doc. 16) sets forth the full range of allegations against the parties to the Settlement Agreement. Due to the length and complexity of those allegations, Trustee references that First Amended Complaint for a full explanation of the claims. Stated simply, the Trustee alleged that the Debtor hid his assets through a series of transfers from Schneider LP (owned one-half each by Debtor and his wife, Michelle Schneider) to various other entities, including the Children's Trusts and MedPort. The Trustee sought to substantively consolidate MedPort, Schneider Management and Schneider LP into this bankruptcy and/or obtain a declaration of alter ego/reverse piercing against those entities. The Trustee also sought, among other claims, to avoid numerous transfers as fraudulent.

The litigation involved numerous complex legal issues, including but not limited to:

a. Substantive consolidation;
b. Alter ego and reverse piercing;
c. Jurisdictional issues regarding the appropriate Court in which to adjudicate certain claims (including Stern issues);
d. Collapsing transactions;

    e.    The interplay of substantive consolidation/alter ego/reverse piercing versus the ownership claims of Michelle Schneider;

    f.    Marital rights and claims to ownership of assets and entities versus the Trustee's claims; and

    g.    Questions of solvency and the appropriate measure of solvency for fraudulent transfer purposes.

In addition to legal and technical questions, there were also practical concerns, i.e., the potential value of the Trustee's claims far exceeded the actual value of assets that the Trustee could possibly recover. Specifically, the Trustee identified three primary assets as potential avenues of recovery:

    a.    Billings Residence: Owned by John and Michelle Schneider as joint tenants. Estimated value - $650,000. Homestead exemption claim. Also fully encumbered by a judgment lien which the Children's Trusts purchased from Wells Fargo;

    b.    Whispering Winds Ranch (located in Wyoming): Owned by the Children's Trusts. Estimated value – approximately $1.63 million. MedPort also held a $650,000 mortgage against the Ranch; and

    c.    California Residence: Owned by MedPort. Estimated value $1.8 million.

As of mediation, there were various other bank accounts owned by the various Defendants which had less than $200,000, an interest in a KBS Real Estate Investment Trust (REIT) worth $180,000, a tax refund of approximately $123,000, and $350,000 of disputed funds held in the Goetz, Baldwin and Geddes, P.C. trust account from a prior sale of a small portion of the Whispering Winds Ranch.

There can be no doubt that the litigation in this case would have lasted years and been extremely expensive. The Trustee estimates that the out of pocket litigation expenses to see the Collection AP through to the end would have been approximately $200,000. This would have consisted of normal litigation expenses (depositions, etc.) and also the need to hire extremely competent and expensive financial experts to review the thousands of pages of financial records

and opine on issues related to solvency, etc., in the context of Debtor's complex asset-protection plan.

The litigation would also be extremely expensive for the Defendants and it is clear that all of the Defendants would have depleted every available asset, otherwise potentially available for recovery for creditors, in defending this litigation. In other words, the litigation expenses were a double whammy for the estate because the Estate would have to pay for its own litigation expenses and, also, every dollar spent by the Defendants further depleted the pool of potential assets from which to recover.

Further, with respect to the various real estate parcels in question, there were substantial concerns about what would happen to the real estate during the pendency of the litigation. Who would take care of the properties? Who would pay expenses? Would there be waste and loss of value due to neglect and lack of resources?

With all of these factors in mind, the parties mediated on February 17–18, 2016, with retired Judge Leif Clark acting as the mediator. After two days of mediation, concluding after midnight on the second day, the Parties reached the settlement outlined above and fully memorialized in the Settlement Agreement.

In settling this action, the Trustee obtained what he estimates to be close to $2 million worth of real estate, $240,000 in cash and approximately $61,500 from the tax return. In return, in general, Defendants get to keep their remaining assets, the Trustee abandons (or sells, with respect to Schneider LP and Schneider Management) any interest or claimed interest in the various entity Defendants, including any claims they may have against third parties, and the

Trustee abandons any interest the Estate or Debtor has in claims against certain third parties as described above and in the Settlement Agreement.[3]

The Trustee did not reach the decision to enter into this settlement lightly. It was only after months of investigation and consideration, two days of mediation, and the recommendation of a highly respected mediator, that the Trustee agreed to the settlement.

The Trustee believes that this Settlement, which provides a certain recovery for unsecured creditors and brings over $2 million in assets into the Estate, is in the best interest of creditors and the Estate. There is always risk and uncertainty in litigation and the potential outcomes of this litigation are endless. The Trustee cannot guarantee that a better result, on paper, might flow from this litigation. Moreover, there is no assurance that a better result, on paper, would lead to a better net recovery for unsecured creditors in light of the risks in actual recovery and the requirement for substantial investment of Estate money to fund the costs of ongoing litigation that would be required. The Trustee believes that this substantial settlement, which provides certainty for creditors, is better than undertaking years of delay in litigation and the corresponding risks associated therewith.

## LEGAL AUTHORITY AND ARGUMENT

### I. THE SETTLEMENT SHOULD BE APPROVED.

Bankruptcy Rule 9019(a) gives this Court broad authority to approve a compromise or settlement. This Court has discussed the standards for approval of the compromise of a claim in a matter arising in the Yellowstone Club Cases (Case No. 08-61570-11):

---

[3] As to the claims against third parties, the Trustee has carefully reviewed those claims and determined that, due to the nature of the claims and the issues involved with pursuing such claims and achieving success, the claims have little, if any, net benefit to the Estate and, indeed, pursuit of such claims by the Trustee actually has the potential to expose the Estate to liability which exceeds any potential recovery.

> As discussed in *Martin v. Kane (In re A & C Properties)*, 784 F.2d 1377, 1380–81 (9th Cir. 1986), in determining the fairness, reasonableness and adequacy of a proposed settlement agreement, the court must consider:
>
>> (a) the probability of success in the litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; (d) the paramount interest of the creditors and a proper deference to their reasonable views in the premises.
>
> *See also In re Michael*, 14 Mont. B.R. 363, 365 (1995) (construing *In re A & C Properties*).

(Case no. 08-61570-11, Dkt. 1318, p. 5).

In determining whether to approve a proposed settlement, the bankruptcy court does not need to substitute its judgment for that of the settlement's proponents. It just needs to determine if the settlement falls below a standard of reasonableness. An independent investigation into the underlying dispute is not required. *In re Walsh Constr. Inc.*, 669 F.2d 1325, 1328 (9th Cir. 1982). The Court may weigh the opinions of the trustee, the parties, and their attorneys, as to the appropriateness of the settlement and that the settlement is the wisest course. *In re Blair*, 538 F.2d 849, 851 (9th Cir. 1976).

In addition to the four-prong test set forth in *A & C Properties*, it is also well established that the law favors compromise. *Id*. In accordance with that principle, Bankruptcy Rule 9019(a) gives this Court broad authority to approve a compromise or settlement. *In re General Store of Beverly Hills*, 11 B.R. 539, 542 (9th Cir. BAP 1981). The determination of whether to approve a compromise or settlement is a matter within the sound discretion of this Court. *Providers Benefit Life Ins. Co. v. Tidewater Group, Inc.*, 13 B.R. 764, 765 (Bankr. N.D. Ga. 1981). *See also*, *In re Lions Capital Group*, 49 B.R. 163, 175–76 (Bankr. S.D. N.Y. 1985).

Generally speaking, "The law favors compromise and not litigation for its own sake…." *In re A & C Properties,* 784 F.2d at 1381. A leading treatise, the Collier Handbook for Trustees and Debtors in Possession, echoes this sentiment:

> The trustee should make every effort, alone or with the trustee's attorney, to secure a prompt and equitable settlement for the benefit of the estate. The old saw that a bad settlement is better than a good lawsuit has no truer application than in a bankruptcy case. Bankruptcy courts have historically encouraged trustees to settle lawsuits to the end that the administration of the estate may be wound up promptly. . . . In the vast majority of cases, whether or not creditors appear and object, courts will follow the business judgment and recommendations of the trustee and counsel.

1999 Collier Handbook for Trustees and Debtors in Possession, § 110.3[2], Liquidation of Choses in Action, Settlement, pp.11-6 to 11-7.

In determining whether to approve a proposed settlement, the scope of a bankruptcy court's inquiry is:

> The bankruptcy court need not conduct an exhaustive investigation into the validity of the asserted claim [;]. . . [i]t is sufficient that, after apprising itself of all facts necessary for an intelligent and objective opinion concerning the claim's validity, the court determines that either (1) the claim has a 'substantial foundation' and is not 'clearly invalid as a matter of law,' or (2) the outcome of the claim's litigation is 'doubtful'.

*United States v. Alaska Nat. Bank of the North (In re Walsh Const., Inc.),* 669 F.2d 1325, 1328 (9th Cir. 1982). The Court need not, however, "conclusively determine claims subject to compromise, nor find that the settlement constitutes the best result obtainable." *In re Apex Oil Co.,* 92 B.R. 847, 867 (Bankr. E.D. Mo. 1988) (citing *In re W.T. Grant Co*., 699 F.2d 599, 613 (2d Cir.) *cert. denied,* 464 U.S. 822 (1983)). Similarly, "a precise determination of likely outcomes is not required, since 'an exact judicial determination of the values in issue would defeat the purpose of compromising the claim.'" *In re Telesphere Comm's.*, 179 B.R. 544, 553 (Bankr. N.D. Ill. 1994) (quoting *In re Energy Co-Op., Inc*., 886 F.2d 921, 929 (7th Cir. 1989)).

The Ninth Circuit has noted that "a court generally gives deference to a trustee's business

judgment in deciding whether to settle a matter" subject only to "proof that the compromise is fair and equitable and should be approved." *In re Mickey Thompson Enter. Group, Inc.*, 292 B.R. 415, 420 (9th Cir. BAP 2003).

Each of the four factors, as described by *In re A & C Properties*, is discussed below.

### A. Probability of Success on the Merits:

This case presents a multitude of complex legal issues relating to numerous Defendants and series of transfers. Apart from questions on recovery of transfers, it also implicates complex legal issues pertaining to corporate separateness, substantive consolidation and spousal interests in property. The Trustee strongly believes that he will be successful in recovering substantial assets for creditors, but it is very difficult to precisely calculate the probability of success on any individual claim or asset. This is, in part, because the various transfers and assets are intertwined and recovery of certain assets depends on success on numerous legal fronts through various stages of transfers. Success on certain of Trustee's claims also depends, to a large part, on substantial testimony from the financial experts of the parties. It is difficult to predict the effectiveness of such testimony until it is presented to the Court.

While the Trustee is confident in his claims, the Defendants are equally confident that they have done nothing wrong and insist that any transfers were legitimate estate planning and asset protection. The Defendants are represented by able and experienced counsel, and the Trustee has no doubt that Defendants will fight tooth-and-nail on every legal and factual issue. Further, the bulk of the available assets flow from Schneider LP, an entity formed in 2007 with Debtor and Michelle Schneider as equal owners. The Defendants are adamant that, therefore, even if the Trustee is fully successful in bringing the assets back to Schneider LP, the Estate is only entitled to half of the value of such assets because Michelle Schneider has a claim to ownership of half of all such assets.

The bottom line is that the Trustee believes strongly that he will be successful on many of his claims. However, there are varying levels of potential success, many of which do not result in a better outcome than what is achieved in this settlement. Further, there is an enormous amount of uncertainty.

The probability of success on the merits favors settlement.

**B.     Difficulties in Collecting:**

The Trustee believes that, even if he were successful, there could be substantial difficulty in fully collecting any resulting judgment against Defendants. Neither the Debtor, any of the entity Defendants, nor Michelle Schneider, are generating any significant income. Further, any available liquid assets will be rapidly exhausted in litigation. There are numerous Defendants and, between them, they employ numerous attorneys. The Trustee believes that, if this litigation continues, there will be no liquid assets available to recover from any of the Defendants. This would leave only the real property. As noted above, there is no guarantee that the real property will be preserved during the pendency of the litigation and there are very real concerns that waste will occur and the real property will not retain its present value.

The Trustee is convinced that there is a strong likelihood that, if this litigation were to proceed to judgment, Trustee may have substantial difficulty ultimately collecting more than the agreed upon settlement amount.

**C.     Complexity, Delay and Expense of Continuing Litigation:**

This litigation has already been pending for nine months and discovery and proceedings have barely begun. Indeed, there is not yet a scheduling order. Due to the multitude of complex legal issues, the Trustee believes that this litigation will take years to complete. This is confirmed by the fact that, on some claims, a jury trial is likely required. This means that there will essentially be

trials in the bankruptcy court (on substantive consolidation and alter ego) and in the district court on any remaining claims. In the past, the Debtor has repeatedly demonstrated his propensity to litigate matters to their fullest extent. There is no reason to believe that this case will be any different, including appeals of any ultimate judgment.

Further, the litigation will be extremely expensive for the Estate in terms of the cost of experts and depositions. The Trustee believes these expenses may well approach $200,000 – an amount of money which the Estate does not presently have. This means that the Trustee will likely spend all of the money he has gathered up until this point on this litigation, making any recovery for creditors entirely dependent on this litigation.

The litigation will be time-consuming and extremely expensive. There are myriad issues and complicated legal theories that will take years to litigate. Further, as explained above, Trustee believes that lengthy and expensive litigation could drain Defendants' available assets and prevent a substantial recovery, even if the Trustee is successful. Even if the Trustee is successful in the litigation and in recovering assets, it will be years before creditors see any distributions

The Trustee believes that this settlement is prudent because it provides a certain and substantial recovery for creditors.

D.  **Interest of Creditors:**

For all of the foregoing reasons, the Trustee believes that the interest of the Estate's creditors is best served by this settlement. The Settlement provides a guaranteed substantial recovery to the Estate in a timely manner, and avoids substantial expenditures in litigation costs. Although the Trustee may ultimately obtain a larger judgment against Defendants, the probability of collecting more than the settlement amount is uncertain at best, and any distribution to unsecured creditors would be years away.

Thus, the Trustee firmly believes that the creditors of the Estate are best-served by this settlement.

## II. THE SALE OF THE SCHNEIDER LP AND SCHNEIDER MANAGEMENT INTERESTS SHOULD BE FREE AND CLEAR.

The parties also seek an order of the Court that the sale of Debtor's (now the Estate's) interest in Schneider Limited Partnership and Schneider Management, is free and clear of any liens, encumbrances or other interests, pursuant to 11 U.S.C. § 363(f). Here, the Trustee is aware of no entity or person, other than the Estate, who claims any interest in Debtor's former interest in Schneider Limited Partnership and Schneider Management. Therefore, the Court should order that the sale, when it is consummated, is free and clear pursuant to 11 U.S.C. § 363(f).

## III. THE APPROVAL ORDER MUST ADDRESS TWO ADDITIONAL PROVISIONS.

Finally, the Settlement Agreement requires the Trustee to seek two additional orders from the Court. First, the Trustee must seek a finding of fact and conclusion of law that "the causes of action asserted by the Trustee are all property of the bankruptcy estate, to the exclusion of any creditor." *Id*., p. 4, ¶ 2.n. This finding is entirely appropriate because it is clear that the causes of action asserted by the Trustee are property of the bankruptcy estate pursuant to 11 U.S.C. § 541, and that the Trustee is the proper party to pursue such claims under 11 U.S.C. §§ 542, 544, 547, 548 and 549. Because this finding is a condition precedent to enforcement of the Settlement Agreement, the Trustee requests it be included in the order approving the settlement.

Second, the Settlement Agreement requires that the Trustee:

> shall request an order of the court that authorizes and directs the trustee not to share with any other person or entity any work product with respect to this adversary proceeding or discuss any aspect of this adversary proceeding with any other person or entity, other than what is reasonably necessary to obtain court approval or to otherwise comply with this agreement or the trustee's duties as a chapter 7 panel trustee, or except as otherwise compelled pursuant to a court order or enforceable subpoena.

*Id.*, p. 4, ¶ 2.o. The Code states that, "unless the court orders otherwise, furnish such information concerning the state and the estate's administration as is requested by a party in interest." 11 U.S.C. § 704(a)(7). Here, the limitation applies only to work product from AP-15, not information related to the remainder of the bankruptcy case. Further, the language allows for production of documents pursuant to court order, enforceable subpoena, or as otherwise reasonably necessary to comply with the duties of a Chapter 7 panel trustee. Thus, if it is required, there are avenues for parties in interest to seek such information. This finding is within the Court's authority and should be included in the order approving the settlement.

## CONCLUSION

In sum, the Trustee and the other parties believe this is a fair settlement which is in the best interest of the Estate. Therefore, the Trustee respectfully requests the Motion be granted.

DATED this 4th day of March, 2016.

GOETZ, BALDWIN & GEDDES, P.C.

By: */s/Trent M. Gardner*
Trent M. Gardner/Jeffrey J. Tierney
Attorneys for Trustee Joseph V. Womack

## CERTIFICATE OF SERVICE

The undersigned hereby certifies under penalty of perjury that on March 4, 2016, a copy of the foregoing pleading was served (i) by electronic means pursuant to LBR 9013-1(d)(2) on the parties noted in the Court's ECF transmission facilities and/or (ii) by mail on the following parties:

Neal G. Jensen
Assistant U.S. Trustee
301 Central Avenue, Suite 204
Great Falls, MT 59401-3113

                                                           */s/Trent M. Gardner*
                                                         Trent M. Gardner
                                                         Attorneys for Trustee Joseph V. Womack

## NOTICE OF OPPORTUNITY TO RESPOND
## AND REQUEST A HEARING

If you object to the motion, you must file a written responsive pleading and request a hearing within fourteen (14) days of the date of the motion. The responding party shall schedule the hearing on the motion at least twenty-one 21 days after the date of the response and request for hearing and shall include in the caption of the responsive pleading in bold and conspicuous print the date, time and location of the hearing by inserting in the caption the following:

**NOTICE OF HEARING**
**Date:** _____
**Time:**_____
**Location:**_____

If no objections are timely filed, the Court may grant the relief requested as a failure to respond by any entity shall be deemed an admission that the relief requested should be granted.

14-61357-RBK   Doc#: 216   Filed: 03/04/16   Entered: 03/04/16 08:20:35   Page 17 of 17