NOW, THEREFORE, in consideration of the covenants and mutual agreements contained in this Agreement and for other good and valuable consideration, receipt and sufficiency of which are hereby acknowledged, the parties hereby agree as follows:

ARTICLE I
SALE AND PURCHASE OF JUDGMENTS

SECTION 1.01. Sale and Purchase of Judgments. Subject to and upon the terms and provisions of this Agreement, the Assignor agrees to sell, assign and transfer to the Assignee, and the Assignee agrees to purchase from the Assignor on the Closing Date all of the Assignor's right, title and interest in and to the Judgments, together with all of the Assignor's rights relating to the Judgments. The Assignee hereby agrees, for its own account and risk, to accept the assignment of the Judgments.

SECTION 1.02. Purchase Price. The Assignee agrees to purchase the Judgments from the Assignor for the sum of SIX HUNDRED FIFTY THOUSAND AND NO/100 DOLLARS ($650,000.00) ("the Purchase Price"). The Assignee shall pay to the Assignor the Purchase Price by wire transfer to Assignor in the amount of the Purchase Price, on or prior to March 21, 2014 as follows:

SEND TO:     Wells Fargo Bank, San Francisco
             Attn: Note Sale / SA CMG Servicing
             ABA No.
             GL Acct ¡
             Account Name: Wire in Process (NOTE SALE)
             Further Credit to: Northern Rockies Neuro Spine, PC
             Obligor/Obligation #0:

SECTION 1.03. Assignment of Judgments. Upon the Closing Date and after receipt by the Assignor of the entire Purchase Price, the Assignor shall execute and deliver to Assignee an Assignment of Judgments (in form substantially similar to that attached hereto). Assignor shall provide evidence to Assignee that the Assignment of Judgments has been executed by Assignor by the representation of Wyoming legal counsel for Assignor that the executed Assignment of Judgments is in Wyoming legal counsel's possession and will be delivered to Assignee upon Assignor's confirmation that Assignor has received the Purchase Price in accordance with Section 1.02 of the Agreement.

ARTICLE II
CONDITIONS

SECTION 2.01. Conditions Precedent to Assignor's Obligations. Each of the obligations of the Assignor under this Agreement is subject to the fulfillment of each and every one of the following conditions precedent:

    (a)     The Assignee shall have paid the Assignor the Purchase Price no later than March 21, 2014 as specified in Section 1.02 of this Agreement; and

        (b)     Each of the representations, warranties and acknowledgments of the

-2-

Assignee set forth in this Agreement shall be true and correct.

## ARTICLE III
## REPRESENTATIONS

SECTION 3.01.  <u>Assignor's Representations</u>.  Assignor makes no representations or warranties to the Assignee of any kind whatsoever with respect to the Judgments, except that the Assignor represents to the Assignee that:

(a)   The Assignor has all necessary legal authority to enter into the transaction contemplated herein;

(b)   The Judgments (when and if the Fee Judgment is entered) constitute obligations owed to the Assignor; the Assignor has not transferred, assigned or encumbered the Judgments, in whole or in part, to any other person or entity; the Assignor has not entered into any agreement with the Judgment Debtors to accept less than the total amount of the Judgments; and the Judgments remain entirely unpaid;

(c)   When executed and delivered by the Assignor, this Agreement shall constitute a legal, valid and binding agreement of the Assignor, enforceable in accordance with its express terms.  The person executing this Agreement on behalf of the Assignor has full power and authority to bind the Assignor to this Agreement.

SECTION 3.02.  <u>Assignee's Representations</u>.  The Assignee hereby represents and warrants to the Assignor that:

(a) The Assignee is a sophisticated investor with knowledge and experience in financial and business matters sufficient to evaluate the merits and risks of the transaction contemplated by this Agreement and has reviewed the Judgment and form of Fee Judgment and is not relying on the Assignor (except as to the accuracy of Assignor's express representations contained in this Agreement);

(b)   The Assignee has conducted her/their own review and analysis in making the decision to purchase the Judgments;

(c)   The Assignee is not relying on any representations, warranties or other statements made at any time by the Assignor or any of the Assignor's present or former employees, agents or representatives ("Representatives") except for those representations and warranties expressly stated in this Agreement;

(d)   When executed and delivered by the Assignee, this Agreement shall constitute a legal, valid and binding agreement of the Assignee, enforceable in accordance with its express terms.  The person executing this Agreement on behalf of the Assignee has full power and authority to bind the Assignee to this Agreement;

(e)   The Assignee has on hand all of the funds required to remit the Purchase Price to the Assignor, as of the Closing Date; and

(f)    Assignee acknowledges that Assignee bears the risk that the Judgment Debtors fail or refuse to consent to entry of the Fee Judgment. In the case Judgment Debtors do not consent or the Fee Judgment is not approved or entered by the Court, Assignee agrees that this Agreement shall continue to be enforceable in accordance with its terms and Assignee shall still be obligated to pay the entire Purchase Price.

ARTICLE IV
ACKNOWLEDGMENTS

SECTION 4.01.    Assignor Remains Owner Until Closing Date.    The Assignee acknowledges and agrees that the Assignor remains the owner of the Judgments until the Assignee has satisfied all terms and conditions under this Agreement, including without limitation, the payment in full to the Assignor of the Purchase Price on or prior to the Closing Date.

SECTION 4.02.    Assumption.    The Assignee acknowledges that all risk of loss in connection with the Judgments shall be borne by the Assignee upon Closing.

SECTION 4.03.    Remedies.    In the event Assignee fails to remit the Purchase Price in complete conformity with this Agreement, this Agreement shall terminate and neither party shall have any further obligation to one another hereunder. In the event Assignor fails to execute and deliver the Assignment of Judgments as set forth herein, Assignee's sole remedy shall be specific performance.

ARTICLE V
MISCELLANEOUS

SECTION 5.01.    No Third Party Beneficiaries.    This Agreement is made for the exclusive benefit and protection of the parties hereto, and no other person or entity shall be a direct or indirect beneficiary of, or shall have any direct or indirect cause of action or claim in connection with this Agreement.

SECTION 5.02.    Governing Law.    This Agreement shall be governed by and construed in accordance with Wyoming law, except to the extent that one party may have greater rights under Federal law, in which case this choice of Wyoming law shall not be deemed to deprive such party of the rights and remedies that may be available to it under Federal law.

SECTION 5.03.    Counterparts.    This Agreement may be executed in any number of counterparts, each of which shall be deemed an original, but all such counterparts together shall constitute one and the same document. Execution of this Agreement by any party may be evidenced by an originally executed copy, delivered to the other party in person, by U.S. mail or courier delivery, email or facsimile.

SECTION 5.04.    Entire Agreement; Amendments.    This Agreement constitutes the entire and complete agreement of the parties hereto. This Agreement supersedes all prior drafts, communications and agreements regarding the subject matter of this Agreement.    This Agreement may be modified or amended only by a writing signed by each of the parties hereto. All representations and warranties of the parties hereto shall survive the Closing of the transaction contemplated by this Agreement.

-4-

SECTION 5.05.  <u>Additional Documents after Closing</u>.  Assignor agrees to execute any additional documents reasonably requested by Assignee to further the purposes of this Agreement.  Assignee, at its sole cost and expense, shall prepare and deliver to Assignor such documents as are reasonably necessary for such purposes of this Section 5.05 after Closing.  All documents to be delivered to Assignor shall be in form and substance reasonably satisfactory to Assignor.

**ASSIGNOR:**

WELLS FARGO BANK, N.A.

By _____
Name _____ Jerald Lundgren
Title _____ Vice President

-5-

**ASSIGNEE:**

KATHLEEN THERESA BURROWS, as Trustee of the BRANDON SCHNEIDER BENEFIT TRUST dated March 30, 2012

By: _Kathleen Theresa Burrows, Trustee_

Name: Kathleen Theresa Burrows, Trustee

KATHLEEN THERESA BURROWS, as Trustee of the SHANNON SCHNEIDER BENEFIT TRUST dated March 30, 2012

By: _Kathleen Theresa Burrows, Trustee_

Name: Kathleen Theresa Burrows, Trustee

KATHLEEN THERESA BURROWS, as Trustee of the CAITLIN SCHNEIDER BENEFIT TRUST dated March 30, 2012

By: _Kathleen Theresa Burrows, Trustee_

Name: Kathleen Theresa Burrows, Trustee

# PROMISSORY NOTE

$650,000.00                                                      March 19, 2014, 12:01 a.m.
Principal Sum

FOR VALUE RECEIVED, **Kathleen Teresa Burrows, Trustee of the following three Trusts:   The Brandon Schneider Benefit Trust dated March 30, 2012; The Shannon Schneider Benefit Trust dated March 30, 2012;, and, The Caitlin Schneider Benefit Trust dated March 30, 2012,** (collectively "Maker"), said Trusts being Wyoming Trusts, promise to pay jointly and severally, to the order of **MedPort, LLC,** a Wyoming Limited Liability Company ("Payee"), at Payee's designated address, which is 15836 Astral Street, Chino Hills, California 91709, the principal sum of **Six Hundred Fifty Thousand Dollars and no/100 ($650,000.00),** as stated above, together with interest on the unpaid principal sum from time to time outstanding at the rate of Five Percent (5.0%) per annum.  Interest, based on a 365-day year, shall be accrued for the number of days the principal sum (or any portion thereof) is actually outstanding.

1.      Payments. Payments under this Note shall be interest only for the first 24 months, paid monthly with the first payment due and payable on April 5, 2014.  Upon completion of the final interest only payment on March 5, 2016, the remaining principal balance shall be amortized over a twenty 20 year period with equal monthly installments.

Any payment due and owing under this Note but not paid shall be compounded monthly on the first day of each calendar month if not paid on the due date at the Default Interest Rate allowed below under.   All payments on this Note shall be applied first to the payment of accrued interest, and, after all such interest has been paid, any remainder shall be applied to reduction of the principal balance.  All amounts payable hereunder are payable in lawful money of the United States of America or such other consideration as agreed upon by Maker and Payee.

EXHIBIT
13

2.      Voluntary Prepayment.  The privilege to prepay all or any part of the principal sum from time to time without penalty is hereby reserved to Maker, provided that any such principal prepayment shall be accompanied by all interest then accrued on the amount prepaid, if any.

3.      Late Charge.  If any payment under this Note, or any part thereof, is not paid within five (5) days of when the same becomes due, Maker agrees, at the option of Payee, to pay a "late charge" of ten percent (10%) of the installment due.

4.      Event of Default.  As used in this Note, an "Event of Default" means any one of the following events (whatever the reason of such Event of Default, and whether it be voluntary or be effected by operation of law):

(a)     Maker's failure to pay when due any part of the principal or interest under this Note when such amount is due;

(b)     Maker's default in the performance of any other obligation under this Note or under the Security Agreement which is not cured within 30 days after Maker has received notice from Payee of such default;

(c)     Maker's transfer or attempted transfer of, or grant or attempted grant of a security interest in, the Property;

(d)     the seizure or taking of the Property by any third party pursuant to any legal action, security interest, lien or other encumbrance;

(e)     Maker defaults on any other debts, obligations, or liabilities to Payee or to any other person or entity;

Promissory Note
Page | 2

(f)     Maker shall be unable, or admit in writing Maker's inability, to pay its debts, or shall not pay Maker's debts generally as they come due, or shall make any assignment for the benefit of creditors;

(g)     Maker shall commence, or there shall be commenced against Maker, any case, proceeding, or other action seeking to have an order for relief entered with respect to Maker, or to adjudicate Maker as a bankrupt or insolvent, or seeking reorganization, arrangement, adjustment, liquidation, dissolution, or composition under any law relating to bankruptcy, insolvency, reorganization, or relief of debtors or seeking appointment of a receiver, trustee, custodian, or other similar fiduciary, with respect to any part of Maker's business or property, which, in the case of a proceeding or action brought against Maker is not dismissed or stayed within sixty (60) days after the date of its commencement; or

(h)     Maker takes any action in contemplation of any of the matters set forth in the previous subparagraphs (in which case Maker is obligated to advise Payee within forty-eight (48) hours of the occurrence of such action).

If an Event of Default occurs and is continuing, then Payee may declare the principal of this Note and the interest accrued thereon to be due and payable immediately, by a notice in writing to Maker, and upon any such declaration, such amount shall become immediately due and payable.  Maker hereby agrees to pay reasonable attorneys' fees and all other reasonable costs and expenses incurred, after an Event of Default, in the enforcement of this Note, the enforcement of any security interest with respect to this Note, and the collection of amounts due hereunder, whether such enforcement or collection is by court action or otherwise.

If the principal of this Note becomes due prior to its stated maturity because of acceleration by Payee as provided above because of an Event of Default, then any part of the

principal sum and any accrued interest then due and unpaid shall, from and after the date of such Event of Default, bear interest at the rate per annum equal to Eighteen Percent (18%) per annum, thereafter compounded quarterly at each calendar quarter.

5.    Attorneys' Fees.  Maker hereby agrees to pay reasonable attorneys' fees and all other reasonable costs and expenses incurred, after an Event of Default, in the enforcement of this Note, the enforcement of any security interest with respect to this Note, and the collection of amounts due hereunder, whether such enforcement or collection is by court action or otherwise.

6.    Miscellaneous; Jurisdiction.  Maker waives demand for payment, presentment for payment, notice of dishonor, protest and notice of protest.  This Note shall be governed as to validity, interpretation, construction, effect and in all other respects by the laws and decisions of the State of Wyoming without regard to the conflicts of law principles of such state.  Maker agrees that the federal and state courts located in the State of Wyoming shall have subject matter jurisdiction to entertain any action brought to enforce or collect upon this Note and, by execution hereof, voluntarily submits to personal jurisdiction of such courts; provided, however, that such jurisdiction shall not be exclusive and, at Payee's option, Payee may commence such action in any other court which otherwise has jurisdiction.  No delay or omission by Payee in exercising any power or right hereunder shall impair such right or power or be construed to be a waiver of any default, nor shall any single or partial exercise of any power or right hereunder preclude any or full exercise thereof or the exercise of any other right or power.  Each legal holder hereof shall have and may exercise all the rights and powers given to Payee herein.

7.    Assignment by Payee.  Payee may assign this Promissory Note by providing written notice to Maker.

**Signatures on following page**

Promissory Note
Page | 4

This Note is executed to be effective as of March 19, 2014, 12:01 a.m.

**MAKER:**

_(signature)_     Date: March 19, 2014
Kathleen Theresa Burrows, Trustee of
The Brandon Schneider Benefit Trust
Dated March 30, 2012

_(signature)_     Date: March 19, 2014
Kathleen Theresa Burrows, Trustee of
The Shannon Schneider Benefit Trust
Dated March 30, 2012

_(signature)_     Date: March 19, 2014
Kathleen Theresa Burrows, Trustee of
The Caitlin Schneider Benefit Trust
Dated March 30, 2012

# MORTGAGE

**THIS MORTGAGE** is made this 19th day of March, 2014, between the Mortgagor, **Kathleen Teresa Burrows, Trustee of the following three Trusts: The Brandon Schneider Benefit Trust dated March 30, 2012, The Shannon Schneider Benefit Trust dated March 30, 2012, and The Caitlin Schneider Benefit Trust dated March 30, 2012,** said Trusts being Wyoming Trusts, (herein "Borrower"), and the Mortgagee, **MedPort, LLC,** a Wyoming Limited Liability Company with a designated address of, 15836 Astral Street, Chino Hills, California 91709, (herein "Lender").

**WHEREAS,** Borrower is indebted to Lender in the principal sum of Six Hundred Fifty Thousand Dollars and no/100 ($650,000.00), which indebtedness is evidenced by Borrower's note dated the 19th day of March, 2014, (the "Note").

**TO SECURE** to Lender (a) the repayment of the indebtedness evidenced by the Note, with interest thereon, the payment of all other sums, with interest thereon, advanced in accordance herewith to protect the security of this Mortgage, and the performance of the covenants and agreements of Borrower herein contained and (b) the repayment of any future advances, with interest thereon, made to Borrower by Lender (herein "Future Advances"), Borrower does hereby mortgage, grant and convey to Lender, with power of sale, the following described property located in the County of Park, State of Wyoming:

### See Attached Exhibits A

hereby waiving and releasing any and all homestead rights under the laws of the State of Wyoming.

Together with all improvements now or hereafter erected on the property, and all easements, rights, appurtenances, rents, royalties, mineral, oil and gas rights and profits, water, water rights, and water stock, and all fixtures now or hereafter attached to the property, all of which, including replacements and additions thereto, shall be deemed to be and remain a part of the property covered by this Mortgage; and all of the foregoing, together with said property (or the leasehold estate if this Mortgage is on a leasehold) are herein referred to as the "Property".

Borrower covenants that Borrower is lawfully seized of the estate hereby conveyed and has the right to mortgage, grant and convey the Property, (that the Property is unencumbered), and that Borrower will warrant and defend generally the title to the Property against all claims and demands, subject to any declarations, easements or restrictions listed in a schedule of exceptions to coverage in any title insurance policy insuring Lender's interest in the Property, and any lien for the current year's property tax.

Page 1 of 8



2014-1285  Park County WY   3/25/2014 2:19 PM   Fees: $36.00

**Uniform Covenants.**

Borrower and Lender covenant and agree as follows:

1. **Payment of Principal and Interest.** Borrower shall promptly pay when due the principal of and interest on the indebtedness evidenced by the Note, prepayment and late charges as provided in the Note and the principal of and interest on any Future Advances secured by this Mortgage.

2. **Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under the Note and paragraph 1 hereof shall be applied by Lender first in payment of interest payable on the Note, then to the principal of the Note, and then to interest and principal on any Future Advances.

3. **Charges; Liens.** Borrower shall pay all taxes, assessments and other charges, fines and impositions attributable to the Property which may attain a priority over this Mortgage, and leasehold payments or ground rents, if any, by Borrower making payment, when due, directly to the payee thereof. Borrower shall promptly furnish to Lender all notices of amounts due under this paragraph, and in the event Borrower shall make payment directly, Borrower shall promptly furnish to Lender receipts evidencing such payments. Borrower shall promptly discharge any lien which has priority over this Mortgage; provided, that Borrower shall not be required to discharge any such lien so long as Borrower shall agree in writing to the payment of the obligation secured by such lien in a manner acceptable to Lender, or shall in good faith contest such lien by, or defend enforcement of such lien in, legal proceedings which operate to prevent the enforcement of the lien or forfeiture of the Property or any part thereof.

4. **Hazard Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire and other hazards as Lender sees fit.

5. **Preservation and Maintenance of Property; Leaseholds** Borrower shall keep the Property in good repair and shall not commit waste or permit impairment or deterioration of the Property and shall comply with the provisions of any lease if this Mortgage is on a leasehold.

6. **Protection of Lender's Security.** If Borrower fails to perform the covenants and agreements contained in this Mortgage, or if any action or proceeding is commenced which materially affects Lender's interest in the Property, including, but not limited to, eminent domain, insolvency, code enforcement, or arrangements or proceedings involving a bankrupt or decedent, then Lender at Lender's option, upon notice to Borrower, may make such appearance, disburse such sums and take such action as is necessary to protect Lender's interest, including, but not limited to, disbursement of reasonable attorney's fees and entry upon the Property to make repairs. If Lender required mortgage insurance as a condition of making the loan secured by this Mortgage, Borrower shall pay the premiums required to maintain such insurance in effect until such time as the requirement for such insurance terminates in accordance with Borrower's and Lender's written agreement or applicable law. Borrower shall pay the amount of all mortgage insurance premiums.

Page 2 of 8

Any amount disbursed by Lender pursuant to this paragraph 6, with interest thereon, shall become additional indebtedness of Borrower secured by this Mortgage. Unless Borrower and Lender agree to other terms of payment, such amounts shall be payable upon notice from Lender to Borrower requesting payment thereof, and shall bear interest from the date of disbursement at the rate payable from time to time on outstanding principal under the Note unless payment of interest at such rate would be contrary to applicable law, in which event such amounts shall bear interest at the highest rate permissible under applicable law.   Nothing contained in this paragraph 6 shall require Lender to incur any expense or take any action hereunder.

7.     **Inspection**.   Lender may make or cause to be made reasonable entries upon and inspections of the Property, provided that Lender shall give Borrower notice prior to any such inspection specifying reasonable cause therefor related to Lender's interest in the Property.

8.     **Condemnation**.   The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of the Property, or part thereof, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender.

In the event of a total taking of the Property, the proceeds shall be applied to the sums secured by this Mortgage, with the excess, if any, paid to Borrower.  In the event of a partial taking of the Property, unless Borrower and Lender otherwise agree in writing, there shall be applied to the sums secured by this Mortgage such proportion of the proceeds as is equal to that proportion which the amount of the sums secured by this Mortgage immediately prior to the date of taking bears to the fair market value of the Property immediately prior to the date of taking, with the balance of the proceeds paid to Borrower.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the condemnor offers to make an award or settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date such notice is mailed, Lender is authorized to collect and apply the proceeds, at Lender's option, either to restoration or repair of the Property or to the sums secured by this Mortgage.

Unless Lender and Borrower otherwise agree in writing, any such application of proceeds to principal shall not extend or postpone the due date of the monthly installments referred to in paragraph 1 hereof or change the amount of such installments.

9.     **Borrower Not Released**.   Extension of the time for payment or modification of amortization of the sums secured by this Mortgage granted by Lender to any successor in interest of Borrower shall not operate to release, in any manner, the liability of the original Borrower and Borrower's successors in interest.   Lender shall not be required to commence proceedings against such successor or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Mortgage by reason of any demand made by the original Borrower and Borrower's successors in interest.

Page 3 of 8

10. **Forbearance by Lender Not a Waiver.** Any forbearance by Lender in exercising any right or remedy hereunder, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy. The procurement of insurance or the payment of taxes or other liens or charges by Lender shall not be a waiver of Lender's right to accelerate the maturity of the indebtedness secured by this Mortgage.

11. **Remedies Cumulative.** All remedies provided in this Mortgage are distinct and cumulative to any other right or remedy under this Mortgage or afforded by law or equity, and may be exercised concurrently, independently or successively.

12. **Successors and Assigns Bound; Joint and Several Liability; Captions.** The covenants and agreements herein contained shall bind, and the rights hereunder shall inure to, the respective successors and assigns of Lender and Borrower, subject to the provisions of paragraph 16 hereof. All covenants and agreements of Borrower shall be joint and several. The captions and headings of the paragraphs of this Mortgage are for convenience only and are not to be used to interpret or define the provisions hereof.

13. **Notice.** Except for any notice required under applicable law to be given in another manner, (a) any notice to Borrower provide for in this Mortgage shall be given by mailing such notice by certified mail addressed to Borrower at the Property Address or at such other address as Borrower may designate by notice to Lender as provided herein, and (b) any notice to Lender shall be given by certified mail, return receipt requested, to Lender's address stated herein or to such other address as Lender may designate by notice to Borrower as provided herein. Any notice provided for in this Mortgage shall be deemed to have been given to Borrower or Lender when given in the manner designated herein.

14. **Uniform Mortgage; Governing Law; Severability.** This form of mortgage combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property. This Mortgage shall be governed by the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Mortgage or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Mortgage or the Note which can be given effect without the conflicting provision, and to this end the provisions of the Mortgage and the Note are declared to be severable.

15. **Borrower's Copy.** Borrower shall be furnished a conformed copy of the Note and of this Mortgage at the time of execution or after recordation hereof.

16. **Transfer of the Property; Assumption.** If all or any part of the Property or an interest therein is sold or transferred by Borrower without Lender's prior written consent, excluding (a) the creation of a lien or encumbrance subordinate to this Mortgage, (b) the creating of a purchase money security interest for household appliances, (c) a transfer by devise, descent or by operation of law upon the death of a

Page 4 of 8

joint tenant or (d) the grant of any leasehold interest of three years or less not containing an option to purchase, Lender may, at Lender's option, declare all the sums secured by this Mortgage to be immediately due and payable. Lender shall have waived such option to accelerate if, prior to the sale or transfer, Lender and the person to whom the Property is to be sold or transferred reach agreement in writing, that the credit of such person is satisfactory to Lender and that the interest payable on the sums secured by this Mortgage shall be at such rate as Lender shall request. If Lender has waived the option to accelerate provided in this paragraph 16 and if borrower's successor in interest has executed a written assumption agreement accepted in writing by Lender, Lender shall release Borrower from all obligations under this Mortgage and the Note.

If Lender exercises such option to accelerate, Lender shall mail Borrower notice of acceleration in accordance with paragraph 14 hereof. Such notice shall provide a period of not less than 30 days from the date the notice is mailed within which Borrower may pay the sums declared due. If Borrower fails to pay such sums prior to the expiration of such period, Lender may, without further notice or demand on Borrower, invoke any remedies permitted by paragraph 17 hereof.

**Non-Uniform Covenants**.

Borrower and Lender further covenant and agree as follows:

17.   **Acceleration; Remedies**.   Except as provided in paragraph 16 hereof, upon Borrower's breach of any covenant or agreement of Borrower in this Mortgage, including the covenants to pay when due any sums secured by this Mortgage, Lender prior to acceleration shall mail notice to Borrower as provided in paragraph 13 hereof specifying: (1) the breach; (2) the action required to cure such breach; (3) a date, not less than 30 days from the date the notice is mailed to Borrower, by which such breach must be cured; and (4) that failure to cure such breach on or before the date specified in the notice may result in acceleration of the sums secured by this Mortgage and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of default or any other defense of Borrower to acceleration and sale. If the breach is not cured on or before the date specified in the notice, Lender at Lender's option may declare all of the sums secured by this Mortgage to be immediately due and payable without further demand and may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all reasonable costs and expenses incurred in pursuing the remedies provided in this paragraph 17 including, but not limited to, reasonable attorney's fees.

If Lender invokes the power of sale, Lender shall give notice of intent to foreclose to Borrower and to the person in possession of the Property, if different, in accordance with applicable law. Lender shall mail a copy of a notice of sale and the Property shall be sold in the manner prescribed by applicable law. Lender or Lender's designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all reasonable costs and expenses of the sale, including, but

not limited to, reasonable attorney's fees and costs of title evidence; (b) to all sums secured by this Mortgage; and (c) the excess, if any, to the persons legally entitled thereto.

18.    **Borrower's Right to Reinstate**.    Notwithstanding Lender's acceleration of the sums secured by this Mortgage, Borrower shall have the right to have any proceedings begun by Lender to enforce this Mortgage discontinued at any time prior to the earlier to occur of (i) the fifth day before sale of the Property pursuant to the power of sale contained in this Mortgage, or (ii) entry of a judgment enforcing this Mortgage if: (a) Borrower pays Lender all sums which would be then due under this Mortgage, the Note and notes securing Future Advances, if any, had no acceleration occurred; (b) Borrower cures all breaches of any other covenants or agreements of Borrower contained in this Mortgage;   (c) Borrower pays all reasonable expenses incurred by Lender in enforcing the covenants and agreements of Borrower contained in this Mortgage and in enforcing Lender's remedies as provided in paragraph 17 hereof, including, but not limited to, reasonable attorney's fees; and (d) Borrower takes such action as Lender may reasonably require to assure that the lien of this Mortgage, Lender's interest in the Property and Borrower's obligation to pay the sums secured by this Mortgage shall continue unimpaired.  Upon such payment and cure by Borrower, this Mortgage and the obligation secured hereby shall remain in full force and effect as if no acceleration had occurred.

19.    **Assignment of Rents; Appointment of Receiver; Lender in Possession**.  As additional security hereunder, Borrower hereby assigns to Lender the rents of the Property, provided that Borrower shall, prior to acceleration under paragraph 17 hereof or abandonment of the Property, have the right to collect and retain such rents as they become due and payable.

Upon acceleration under paragraph 17 hereof or abandonment of the Property, and at anytime prior to the expiration of any period of redemption following judicial sale, Lender, in person, by agent or by judicially appointed receiver, shall be entitled to enter upon, take possession of and manage the Property, and to collect the rents of the Property including those past due.  All rents collected by lender or the receiver shall be applied first to payment of the costs of management of the Property and collection of rents, including, but not limited to, receiver's fees, premiums on receiver's bonds and reasonable attorney's fees, and then to the sums secured by this Mortgage. Lender and the receiver shall be liable to account only for those rents actually received.

20.    **Release**.   Upon payment of all sums secured by this Mortgage, Lender shall release this Mortgage without charge to Borrower.  Borrower shall pay all cost of recordation, if any.

21.    **Waiver of Homestead**.    Borrower hereby waives all right of homestead exemption in the Property.

22.    **Assignment by Lender**.  Lender may assign this Mortgage and the Promissory Note for which it secures to a third party by providing Borrower with written notice.  Specifically, Lender may utilize the Promissory Note secured by this Mortgage,

Pg: 6 of 9
2014-1285  Park County WY  3/25/2014 2:19 PM  Fees: $36.00

and Mortgage to effectuate an IRS Code Section 1031 Tax-Free Exchange.  Borrower shall assist Lender in engaging in such a transaction and execute all documents necessary to effectuate such a tax-free exchange, so long as such tax-free exchange does not impose additional obligations or expense upon Borrower.

<strong>IN WITNESS WHEREOF</strong>, Borrower has executed this Mortgage.

**BORROWER:**

Kathleen Theresa Burrows, Trustee of
The Brandon Schneider Benefit Trust
Dated March 30, 2012

Kathleen Theresa Burrows, Trustee of
The Shannon Schneider Benefit Trust
Dated March 30, 2012

Kathleen Theresa Burrows, Trustee of
The Caitlin Schneider Benefit Trust

STATE OF California )
                    ) ss:
COUNTY OF San Bernardino )

The foregoing instrument was acknowledged before me by **Kathleen Theresa Burrows, Trustee of The Brandon Schneider Benefit Trust dated March 30, 2012, Trustee of The Shannon Schneider Benefit Trust dated March 30, 2012, and The Caitlin Schneider Benefit Trust dated March 30, 2012,** this _19_ day of March, 2014.

Witness my hand and official seal.

See Attached
Notary Public
My Commission Expires: _Sept 23, 204_

Page 7 of 8

Pg: 7 of 9
2014-1295  Park County WY  3/25/2014 2:19 PM  Fees: $36.00

# CALIFORNIA ALL-PURPOSE
# CERTIFICATE OF ACKNOWLEDGMENT

State of California

County of   SAN BERNARDINO

On March 19, 2014 before me,   DELLA J. SMITH NOTARY PUBLIC
<span style="font-size:small">(Here insert name and title of the officer)</span>

personally appeared   Kathleen Theresa Burrows

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_____
Signature of Notary Public

> DELLA J. SMITH
> COMM. #1901390
> NOTARY PUBLIC · CALIFORNIA
> SAN BERNARDINO COUNTY
> My Comm. Expires Sep. 23, 2014
> BCT4

(Notary Seal)

## ADDITIONAL OPTIONAL INFORMATION

### INSTRUCTIONS FOR COMPLETING THIS FORM
*Any acknowledgment completed in California must contain verbiage exactly as appears above in the notary section or a separate acknowledgment form must be properly completed and attached to that document. The only exception is if a document is to be recorded outside of California. In such instances, any alternative acknowledgment verbiage as may be printed on such a document so long as the verbiage does not require the notary to do something that is illegal for a notary in California (i.e. certifying the authorized capacity of the signer). Please check the document carefully for proper notarial wording and attach this form if required.*

---

### DESCRIPTION OF THE ATTACHED DOCUMENT

Mortage Loan
<span style="font-size:small">(Title or description of attached document)</span>

_____
<span style="font-size:small">(Title or description of attached document continued)</span>

Number of Pages 8 P 8  Document Date 3-19-14

_____
<span style="font-size:small">(Additional information)</span>

### CAPACITY CLAIMED BY THE SIGNER
- ☐ Individual (s)
- ☐ Corporate Officer

_____
<span style="font-size:small">(Title)</span>
- ☐ Partner(s)
- ☐ Attorney-in-Fact
- ☒ Trustee(s)
- ☐ Other _____

- State and County information must be the State and County where the document signer(s) personally appeared before the notary public for acknowledgment.
- Date of notarization must be the date that the signer(s) personally appeared which must also be the same date the acknowledgment is completed.
- The notary public must print his or her name as it appears within his or her commission followed by a comma and then your title (notary public).
- Print the name(s) of document signer(s) who personally appear at the time of notarization.
- Indicate the correct singular or plural forms by crossing off incorrect forms (i.e. he/she/they– is /are ) or circling the correct forms. Failure to correctly indicate this information may lead to rejection of document recording.
- The notary seal impression must be clear and photographically reproducible. Impression must not cover text or lines. If seal impression smudges, re-seal if a sufficient area permits, otherwise complete a different acknowledgment form.
- Signature of the notary public must match the signature on file with the office of the county clerk.
  - ❖ Additional information is not required but could help to ensure this acknowledgment is not misused or attached to a different document.
  - ❖ Indicate title or type of attached document, number of pages and date.
  - ❖ Indicate the capacity claimed by the signer. If the claimed capacity is a corporate officer, indicate the title (i.e. CEO, CFO, Secretary).
- Securely attach this document to the signed document

2008 Version CAPA v12.10.07 800-873-9865 www.NotaryClasses.com

## EXHIBIT "A"

**Parcel 1:**

That part of Farm Unit "M", according to the Farm Unit Plat, described as follows:

T. 54 N., R. 100 W., 6th P.M., Park County, Wyoming

Section 7:     Lot 37;

Section 18:   Lot 28;

**Parcel 2:**

That part of Farm Unit "M", according to the Farm Unit described as follows:

T. 54 N., R. 101 W., 6th P.M., Park County, Wyoming

Section 12:   Lots 7 and 9:

Section 13:   Lot 16.

Together with all improvements thereon and appurtenances thereto, subject to: 1) all easements and rights of way of record and legally existing; 2) all Declarations of Protective Covenants of record; 3) any prior reservations of oil, gas and minerals in and under said lands; 4) the reservations and exceptions, if any, contained in the government patent to said land.

Print                                                                Page 1 of 2

| Subject: | Re: Fwd: Open House Update: 1701 Bella Laguna Ct, Encinitas, CA 92024 |
| From: | Kathleen Burrows (kathleen.burrows@yahoo.com) |
| To: | omnineuro@live.com; |
| Date: | Wednesday, October 22, 2014 6:47 PM |

You should also take a drive around that area and look at some of the other homes for sale too.  There are several around 1.5m.

On Wednesday, October 22, 2014 5:39 PM, Kathleen Burrows <kathleen.burrows@yahoo.com> wrote:

Very nice!

On Wednesday, October 22, 2014 5:13 PM, John Schneider <omnineuro@live.com> wrote:

Our next home

Thank you,
JS

Begin forwarded message:

> From: "Zillow" <no-reply@email.zillow.com>
> Date: October 22, 2014 at 13:57:28 PDT
> To: <omnineuro@live.com>
> Subject: Open House Update: 1701 Bella Laguna Ct, Encinitas, CA 92024
> Reply-To: "Zillow" <reply-fe5510777c6003797711-359747_HTML-1034547138-64517-66308@email.zillow.com>

## Property Alert

This home has an open house scheduled on Sat., Oct. 25 from 1-4pm.



https://us-mg5.mail.yahoo.com/neo/launch?.rand=6edlg02g9i90j                    5/26/2015

Print                                                                  Page 2 of 2

**For Sale**
**$1,949,500**
5 bd, 5.0 ba, 4,847 sqft
1701 Bella Laguna Ct, Encinitas, CA

See similar homes for sale nearby →

UNSUBSCRIBE        PRIVACY POLICY

© 2006-2014 Zillow, Inc. 1301 Second Avenue, Floor 31, Seattle, WA 98101

Print                                                                                    Page 1 of 1

| Subject: | Re: |
|---|---|
| From: | Kathleen Burrows (kathleen.burrows@yahoo.com) |
| To: | omnineuro@live.com; |
| Date: | Monday, March 2, 2015 5:25 PM |

Hi, May want to consider using a standard land lease agreement. Because the ranch is owned by the kids trusts, the lease should be between the trusts and the person leasing the land (not SLP).

From: John Schneider MD <omnineuro@live.com>
To: Kathleen Burrows <kathleen.burrows@yahoo.com>
Sent: Monday, March 2, 2015 4:09 PM
Subject:

Can you do me a management favor. I do not want to be the one "managing" the ranch since SLP does. This is the contract to the guy that wants to lease the land. His current lease is up 4.1.2015. If this reads ok, would you sign it and mail it to him? Thanks

*J.H. Schneider, MD*
*http://www.linkedin.com/in/johnschneidermd/*

