EXHIBIT E

# COMMISSIONER OF SECURITIES & INSURANCE

MONICA J. LINDEEN
COMMISSIONER

OFFICE OF THE MONTANA
STATE AUDITOR

OFFICE OF U.S. TRUSTEE
GREAT FALLS MT
2016 MAR 18 PM 2:59

*via mail and email*

March 17, 2016

Aaron York
Office of the U.S. Trustee
301 Central Ave., Suite 204
Great Falls, MT 59401
aaron.g.york@usdoj.gov

RE: Bankruptcy proceedings of John H. Schneider; Case No. 14-61357-7

Dear Mr. York:

I am an attorney with the Office of the Montana State Auditor, Commissioner of Securities and Insurance (CSI). We have reviewed the current bankruptcy proceedings involving Dr. John H. Schneider, and are concerned about the pending motions for approval of compromise settlement filed by the Trustee, Joseph Womack. The CSI has had prior dealing with Dr. Schneider relating to several of the claimants in this bankruptcy, and the CSI believes Dr. Schneider should not be entitled to a discharge of those debts.

In 2008, Northern Rockies Insurance Company, LLC (NRIC), received a certificate of authority from the CSI to operate as a pure captive insurance company. Pure captives provide insurance to their parent companies and affiliates. In this case, Dr. Schneider was the chief operations officer for NRIC, which he used to provide medical malpractice insurance to his neurosurgery practice.

In February of 2013, the CSI issued an Order of Suspension against NRIC, attached as Exhibit 1. The reasons for the suspension are detailed in the Order, but the crux of the CSI's concerns was that Dr. Schneider paid out all remaining funds in NRIC on a claim that was not covered under NRIC's insurance policy, and used all remaining surplus in the captive insurance company to settle that claim.

To settle the CSI's concerns and resolve the matter, Dr. Schneider provided an affidavit, signed and notarized on April 15, 2013, attached as Exhibit 2. In that affidavit, Dr. Schneider vowed that he would be personally liable for the outstanding medical malpractice claims against him, and that he would resolve those claims "to the best of [his] ability."

It appears from the filings by the Trustee that Dr. Schneider has done exactly the opposite, and has tried to <u>avoid</u> paying those claims to the best of his ability. Annette Thomas and the Estate of Russell Monaco were listed on the affidavit of Dr. Schneider, but Dr. Schneider has not paid (or otherwise resolved) those claims. Instead, Dr. Schneider filed for bankruptcy, and both Thomas and Monaco have filed claims in his bankruptcy proceeding.[1] If any of the allegations in the Trustee's Amended Complaint to Deny Discharge of Debtor are true, Dr. Schneider has hid assets from the bankruptcy Trustee, and is now willing to settle the proceedings by paying approximately half of the funds the Trustee has attributed to him.

---

[1] An additional claim was filed by Sherri and Larry Rasmussen, who were also listed on the affidavit of Dr. Schneider, but their amount claimed was $0.00. The CSI is not aware of the details behind that claim.

Phone: 1-800-332-6148 / (406) 444-2040 / Main Fax: (406) 444-3497
Securities Fax: (406) 444-5558 / PHS Fax: (406) 444-1980 / Legal Fax: (406) 444-3499
840 Helena Ave., Helena MT 59601   Website: www.csi.mt.gov   E-Mail: csi@mt.gov
2:14-bk-61357-JDP   Doc#: 229-5   Filed: 03/21/16   Page 2 of 16

Dr. Schneider should not be allowed to purchase his bankruptcy discharge, particularly not when he will be left with such significant assets after such seemingly egregious conduct. The proposed settlement would apparently leave Dr. Schneider with a house worth $1.8 million in California and hundreds of thousands of dollars in other assets, while the claims of Thomas and Monaco might be paid 17 percent of what they are owed.[2] The CSI does not believe that outcome would be fair or equitable.

Again, Dr. Schneider promised to be personally liable for the pending claims of Annette Thomas and the Estate of Russell Monaco, and to "resolve the Wyoming litigation, to the best of [his] ability, using [his] own resources." He should be held to that signed and sworn affidavit made to this state agency; which means Dr. Schneider should be denied his discharge of those claims in his bankruptcy proceeding.

Thank you for your time and attention to this matter. If you need any additional information, please contact me at mkakuk@mt.gov or at (406) 444-5223.

Sincerely,

Michael A. Kakuk
Attorney for the CSI

---

[2] Taking the Trustee's valuation of the settlement at $2 million, and dividing by the total amount claimed on the estate of $11.78 million, leads to a percentage of 16.98 percent.

## BEFORE THE COMMISSIONER OF SECURITIES AND INSURANCE
## MONTANA STATE AUDITOR

| IN THE MATTER OF: ) | CASE NO. INS-2013-30 |
|---|---|
| ) | |
| NORTHERN ROCKIES INSURANCE ) | |
| COMPANY, LLC, Montana certificate of ) | ORDER OF SUSPENSION |
| authority # 5282. ) | |
| ) | |

Pursuant to Mont. Code Ann. § 33-28-109, the Commissioner of Securities and Insurance, Montana State Auditor (Commissioner), suspends Northern Rockies Insurance Company, LLC (NRIC) for the following reasons:

1. The State Auditor is the Commissioner of Securities and Insurance. Mont. Code Ann. § 2-15-1903.

2. The Office of the Commissioner of Securities and Insurance (CSI) is under the control and supervision of the Commissioner. Mont. Code Ann. §§ 2-15-1902 and 33-1-301.

3. The Commissioner shall administer the CSI to protect insurance consumers. Mont. Code Ann. § 33-1-311(3).

4. The Commissioner and the CSI have jurisdiction over this matter. Mont. Code Ann. § 33-1-311.

5. NRIC is a Montana captive insurance company, Certificate of Authority #5282. NRIC is authorized to transact medical malpractice insurance business and other lines of business.

6. John H. Schneider, MD, is the CEO of NRIC.

7. In 2012, the CSI became aware that NRIC's captive manager would end its services on or about January 9, 2013.

8. In a letter dated January 3, 2013, the CSI informed Dr. Schneider and NRIC that the company needed to engage the services of a captive manager. The letter explained that NRIC's business plan included the services of a captive manager. The CSI approved NRIC's license with this provision. The CSI considered the absence of a captive manager to be a significant departure from the approved plan, and could subject NRIC to suspension or revocation pursuant to Mont. Code Ann. § 33-28-109(f). The letter stated that NRIC should engage a captive manager on or before January 18, 2013.

9. In an email dated January 7, 2013, the CSI became aware that NRIC was interviewing prospective captive managers. The CSI subsequently extended its deadline to February 1, 2013.

10. In a letter dated February 6, 2013, and received by the CSI on February 11, 2013, Dr. Schneider confirmed that NRIC had not hired a captive manager. Dr. Schneider also stated that as of the time of the letter, he was the only board member for NRIC, LLC.

11. In the letter dated February 6, 2013, Dr. Schneider stated that NRIC, through its agent, had provided a certificate of insurance to all of the Wyoming facilities at which Dr. Schneider and his midlevel employees provided surgical healthcare. However, Dr. Schneider stated that NRIC, through its agent, had not obtained proper certification to transact insurance in Wyoming. As a result, Dr. Schneider stated that NRIC would decline coverage for two claims in Wyoming. Organizational documents filed with the CSI state that NRIC would operate in Wyoming.

12. The CSI became aware that NRIC paid a claim under a policy which was created and approved after the filing and settlement of this claim. The payment on the claim was approved by Dr. Schneider, as Authorized Representative of NRIC. The CSI's review of

Order of Suspension

2

NRIC's policy indicated that the new policy did not cover the prior claim. Thus, the payment under the policy was made erroneously.

13. In the letter dated February 6, 2013, Dr. Schneider acknowledged that NRIC does not have surplus to meet the minimum requirements of Mont. Code Ann. § 33-28-104:

> Currently, Northern Rockies Insurance Company, LLC is underfunded to meet state requirements for insurance certification. Solicitation of funds to obtain minimum required investment for Northern Rockies Insurance Company, LLC reserves are not available. In addition, without management direction, the future of Northern Rockies Insurance Company, LLC is unclear.

At present, and based upon Dr. Schneider's admission, the CSI is aware that NRIC is underfunded to provide insurance.

14. The Commissioner may require additional capital and surplus based on the type, volume and nature of insurance business transacted. Mont. Code Ann. § 33-28-104.

15. The Commissioner may suspend or revoke the license of a captive insurance company. Mont. Code Ann. § 33-28-109. The license of a captive insurance company may be suspended by the Commissioner for any of the following reasons: insolvency or impairment of capital surplus; failure to meet and maintain the requirements of Mont. Code Ann. § 33-28-104; failure to comply with the provisions of its own charter, bylaws, or other organizational document; or if the Commissioner considers it in the best interests of the public. Mont. Code Ann. § 33-28-109 at (1)(a), (1)(b), (1)(d), (2).

16. The acts identified above violate the provisions of Mont. Code Ann. § 33-28-109. NRIC does not have a captive manager, a violation of Mont. Code Ann. § 33-28-109(1)(f). NRIC will not consider claims made in Wyoming, a violation of Mont. Code Ann. § 33-28-109(1)(d), (1)(f). NRIC approved payment of a claim under a policy where the policy did not

Order of Suspension

3

cover this payment, a violation of Mont. Code Ann. § 33-28-109(1)(f). NRIC admitted it was underfunded, a violation of Mont. Code Ann. § 33-28-109(1)(a), (1)(b), (1)(f).

17. It is in the best interests of the public to suspend the license of NRIC, as continuance of this business would harm citizens.

## ORDER

THEREFORE, IT IS HEREBY ORDERED that based on the foregoing, NRIC is placed under **SUSPENSION** of the CSI pursuant to Mont. Code Ann. § 33-28-109. Immediate suspension is necessary and in the best interests of the public.

IT IS FURTHER ORDERED that in order to lift the suspension, NRIC shall obtain and maintain the capital and surplus as required by the CSI. The CSI may require more capital and surplus, based upon information submitted by NRIC pursuant to this Order.

IT IS FURTHER ORDERED that in order to lift the suspension, NRIC shall hire a captive manager, at the approval of the CSI. The captive manager shall ensure internal controls for the management of NRIC's funds and any other aspect of its business. The CSI shall review and approve the internal controls for the management of NRIC.

IT IS FURTHER ORDERED that in order to lift the suspension, NRIC shall replace the funds in its account which it disgorged in the erroneous payment of a claim.

IT IS FURTHER ORDERED that in order to lift the suspension, NRIC shall honor its obligations involving Wyoming to the satisfaction of the CSI.

IT IS FURTHER ORDERED that NRIC shall otherwise comply with the requirements imposed by the Code and the CSI;

IT IS FURTHER ORDERED that NRIC shall provide to the CSI, care of the Chief Financial Examiner, Office of the Commissioner of Securities and Insurance, Montana State

Auditor, 840 Helena Avenue, Helena, MT 59601, within five business days of the execution of this Order, unless otherwise specified, all of the following:

    (a)    A copy of the November 2012, December 2012 and January 2013 bank statements for NRIC's business account at US Bank and any other accounts owned by NRIC.

    (b)    An accounting of premiums receivable as of January 31, 2013.

    (c)    The balance of the Note Receivable - NRNS as of January 31, 2013.

    (d)    A listing of any other assets owned by NRIC as of January 31, 2013.

    (e)    A listing of all known outstanding claims against NRIC.

    (f)    Such other and further information as the CSI requires.

IT IS FURTHER ORDERED that a failure by NRIC to comply with the directives of this order may result in the CSI filing a formal delinquency action in district court pursuant to Mont. Code Ann. § 33-2-1322, and liquidating NRIC pursuant to Mont. Code Ann. §§ 33-2-1341 and 33-2-1342; and/or revocation of its license pursuant to Mont. Code Ann. § 33-28-109(2).

DATED this 14th day of February, 2013.

_____
MONICA J. LINDEEN
Commissioner of Securities and Insurance,
Montana State Auditor

Order of Suspension    5

2:14-bk-61357-JDP   Doc#: 229-5   Filed: 03/21/16   Page 8 of 16

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this __14__ day of February, 2013, a true and correct copy of the foregoing was served upon the following by U.S. mail, certified, postage prepaid:

John H. Schneider, MD, CEO
Northern Rockies Insurance Company, LLC
2877 Spring Creek Lane
Billings, MT 59102

Via Hand-delivery:

Jameson C. Walker
Attorney for the CSI
840 Helena Avenue
Helena, MT 59601

*Darla Sautter* (signature)

Order of Suspension 6

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 26th day of February, 2013, a true and correct copy of the foregoing was served upon the following by U.S. mail, certified, postage prepaid:

John H. Schneider, MD, CEO
Northern Rockies Insurance Company, LLC
1739 Spring Creek Lane, Suite 200
Billings, MT 59102

Via Hand-delivery:

Jameson C. Walker
Attorney for the CSI
840 Helena Avenue
Helena, MT 59601

*[signature]*

\* \* \* \* \* \* \* \* \* \*

STATE OF MONTANA        )
                        :ss.
County of Yellowstone   )

I.      I am John Schneider and I am a licensed medical doctor in the State of Montana.

II.      I submit this affidavit as part of the notice of intent to terminate the existence of Northern Rockies Insurance Company, LLC, a Montana Captive insurance company operating under Certificate of Authority #5282.

III.      I understand that upon receipt of this notice the Commissioner of Insurance of the State of Montana will revoke its Certificate of Authority #5282.

IV.      In way of explanation I offer the following testimony to be placed in the file held by the Office of the Insurance commissioner.

    a.    My medical specialty is neurosurgery, with a focus on disorders of the spine and peripheral nervous system.

    b.    I have served as a neurosurgeon for 26 years. During the past 8 years (2005 through 2013) I have worked under surgical privileges at West Park Hospital, Cody, Wyoming; Northern Wyoming Surgical Center, Cody, Wyoming; Powell Hospital, Powell Wyoming; and, Sheridan Surgical Center, Sheridan Wyoming. I have held no surgical privileges in Montana during that time.

    c.    I was insured for malpractice through the Utah Medical Insurance Association (UMIA) until July of 2009 when my coverage was changed to the captive insurance company, NRIC.

**EXHIBIT 2**

1

d. In regard to any past and future Montana based work:

i. My principal office in Montana is the Northern Rockies Neuro-Spine Clinic located at 1739 Spring Creek Lane, Suite 200, Billings, Montana. For the past 8 years my medical practice in Montana has been limited to diagnosis, with referral of surgical work to the Wyoming institutions at which I held surgical privileges. Since 2004 I neither have had, nor have I sought, surgical privileges at Montana institutions.

ii. My Wyoming (also my entire) surgical practice ceased in January of 2013 and I have performed no surgery since that time. I have now taken all recent surgical patients through a 90-day post operative period of care. On April 26, 2013 I will close my Billings office and cease work as a self-employed physician and surgeon.

iii) I do intend to stay engaged as a physician and surgeon through *locum tenens* placement, but such placement will be institutional under an employee status and not as self employed. The employer will have malpractice coverage in *locum tenens* work.

iv) In the past 9 years I have had no malpractice claim brought against me for work performed in Montana and I do not expect such a claim in the future.

e. In regard to my past and future work at locations other than Montana:

i) Since 1998 I have worked as a surgeon through privileges at three (sometimes four) Wyoming facilities.

2

ii) As of January 2013, my relationship ended with all Wyoming facilities and I no longer treat, or perform surgery on, patients. All recent surgical patients will have been provided 90 days post operative care as of April 26, 2013.

iii) NRIC or myself personally have resolved or are resolving the following claims made in the State of Wyoming:

1. *Biles v Schneider:* Case No. 11-CV-3666-F US District Court, District of Wyoming. Claim was settled on May 9, 2012, with NRIC providing coverage and payment of this claim in January 2013.

2. *Clark v Schneider:* Case No. 26812 Park County, Wyoming, State District Court. Settlement and release signed in March 2013. Schneider funded defense and settlement from personal assets. Schneider representative attorney Steve Emery, Casper WY.

3. *Thomas v Schneider:* Case No. CV 2012- 410 Sheridan County Wyoming, State District Court. Schneider funding defense and potential resolution from personal assets. Schneider representative attorney Steve Emery, Casper, WY.

4. *Monaco Estate v Schneider:* pending Wyoming Medical Review Panel July 2013. Schneider funding defense and potential resolution from personal assets. Schneider representative attorney Steve Emery, Casper, WY.

5. *Rasmussen vs. Westpark Hospital, Schneider et al.:* pending Wyoming Medical Review Panel fall 2013. Schneider defense and resolution has probable medical malpractice insurance coverage under UMIA. Schneider representative attorney Dave Clark, Worland ,WY.

6. John Schneider, MD claim (as to NRIC funds) against any insurance coverage for reimbursement on costs and fees associated with dealing with licensing issues at the Wyoming board of medicine related to *Monaco v Schneider* and above associated

3

claims. Schneider representative attorney Steve Kline and partners of Cheyenee, WY.

V. It is my desire and intention to close NRIC as a functioning entity and resolve the Wyoming related litigation, to the best of my ability, using my own resources. I do not know if any further Wyoming claims will be made other than those listed above.

Further Affiant sayeth not.

DATED this 15th day of April, 2013.

_____
John Schneider, MD

On this 15th day of April, 2013 before me, a notary public, personally appeared John Schneider, known to me to be the person whose name is subscribed to the within instrument, and acknowledged to me that he executed the same.

Becky L Ceniceros
Notary Public for the
State of Montana
Residing at:
My commission expires:

BECKY L CENICEROS
NOTARY PUBLIC for the
State of Montana
Residing at Billings, Montana
My Commission Expires
November 15, 2013



**Monica J. Lindeen**
Commissioner of Securities & Insurance
Montana State Auditor
840 Helena Ave
Helena, MT 59601

Phone: 406.444.2040
800.332.6148
Fax: 406.444.3497
www.csi.mt.gov

## 2012 PREMIUM TAX STATEMENT-CAPTIVE INSURANCE COMPANIES
*Due on or before March 1st*

### For Captives Filing the Annual Report on the Short Form

| Insurer Name (Attach list if necessary) | | | FEIN |
|---|---|---|---|
| NORTHERN ROCKIES INSURANCE COMPANY, LLC | | | |
| **Mailing Address** | City | State | Zip Code |
| 2924 Millennium Circle, Suite B | Billings | MT | 59102 |
| **Administrative Office Fax Number** | Contact Person Telephone Number | | |
| | John H. Schneider, MD | | |

INSTRUCTIONS: A reinsurance premium tax does not apply to premiums for risks or portions of risks that are subject to taxation on a direct basis. For example, assume captive insurer "X" has gross direct premiums collected of $5,000,000 and cedes $1,500,000 of that busines to captive insurer "Y". Captive insurer "X" is subject to premium tax on the entire $5,000,000 of gross direct premiums collected, but captive insurer "Y" is not subject to a reinsurance tax on the $1,500,000 of assumed reinsurance because the premiums were already taxed on a direct basis. If captive insurer "Y" assumed other reinsurance premiums not subject to tax on a direct basis, then a reinsurance tax would apply to those premiums.

### SCHEDULE A - TAX ON DIRECT PREMIUMS WRITTEN

1. Gross Direct Premiums (Annual Report, Page 8, Column 1)     $ 126,680 [01]
2. Less return premiums     $ - [02]
3. Other deductions (provide explanation by attachment)     $ - [03]
4. Premiums subject to Tax (line 1 minus line 2 minus line 3)     $ 126,680 [04]
5. First $20 million of line 4 x .4%    $ 126,680   0.400%   $ 507 [05]
6. Each subsequent dollar of line 4 x .3%    $ -   0.300%   $ - [06]
7. Total (sum of lines 5 and 6)     $ 507 [07]

### SCHEDULE B - TAX ON ASSUMED REINSURANCE PREMIUMS

8. Gross Assumed Reinsurance (Annual Report, Pg 8, Column 2+3)     $ - [08]
9. First $20 million of reinsurance premiums on line $ -   0.225%   $ - [09]
10. Next $20 million of reinsurance premiums on line $ -   0.150%   $ - [10]
11. Each subsequent dollar of reinsurance on line 8 x $ -   0.050%   $ - [11]
12. Total (sum of lines 9 through 11)     $ - [12]

### SCHEDULE C - CALCULATION OF TOTAL AMOUNT DUE

13. Total Premium Tax (sum of lines 7 and 12). If greater than $100,000 then use $100,000.     $ 507 [13]
14. Captives licensed during 2011, the minimum tax is prorated using date (1st qtr- $5,000; 2nd qtr $3,750; 3rd qtr $2,500; 4th qtr $1,250)     $ - [14]
15. Captives licensed prior to 2011, the minimum premium tax is **$5,000**     $ 5,000 [15]
16. Minimum Tax per § 33-28-201(3), MCA (line 14 or 15)     $ 5,000 [16]
17. Tax Due (greater of line 13 or line 16)     $ 5,000 [17]
18. License Annual Renewal Fee of $300 per § 33-28-102(4)(b),     $ 300 [18]
19. Total due to: Commissioner of Insurance (sum of lines 17 and 18)     $ 5,300 [19]

| This is a true report of premiums written in the past calendar year and complies with the requirements of applicable law. | Name of Officer (Type or print) | JOHN H. SCHNEIDER, MD |
|---|---|---|
| Signature of Officer    3/1/2013   Date | Job Title of Officer | CHIEF EXECUTIVE MANAGER |

Monica J. Lindeen
Commissioner of Securities & Insurance
Montana State Auditor
840 Helena Ave
Helena, MT 59601



Phone: 406.444.2040
800.332.6148
Fax: 406.444.3497
www.csi.mt.gov

## 2013 PREMIUM TAX STATEMENT-CAPTIVE INSURANCE COMPANIES
*Due on or before March 1st*

### For Captives Filing the Annual Report on the Short Form

| Insurer Name (Attach list if necessary) | | | FEIN | |
|---|---|---|---|---|
| NORTHERN ROCKIES INSURANCE COMPANY, LLC | | | | |
| Mailing Address | City | State | | Zip Code |
| 2924 Millennium Circle, Suite B | Billings | MT | | 59102 |
| Administrative Office Fax Number | Contact Person Telephone Number | | | |
| | John H. Schneider, MD | | | |

INSTRUCTIONS: A reinsurance premium tax does not apply to premiums for risks or portions of risks that are subject to taxation on a direct basis. For example, assume captive insurer "X" has gross direct premiums collected of $5,000,000 and cedes $1,500,000 of that business to captive insurer "Y". Captive insurer "X" is subject to premium tax on the entire $5,000,000 of gross direct premiums collected, but captive insurer "Y" is not subject to a reinsurance tax on the $1,500,000 of assumed reinsurance because the premiums were already taxed on a direct basis. If captive insurer "Y" assumed other reinsurance premiums not subject to tax on a direct basis, then a reinsurance tax would apply to those premiums.

### SCHEDULE A - TAX ON DIRECT PREMIUMS WRITTEN
1. Gross Direct Premiums (Annual Report, Page 8, Column 1)     $ - [01]
2. Less return premiums     $ - [02]
3. Other deductions (provide explanation by attachment)     $ - [03]
4. Premiums subject to Tax (line 1 minus line 2 minus line 3)     $ - [04]
5. First $20 million of line 4 x .4%    $ -    0.400% $ - [05]
6. Each subsequent dollar of line 4 x .3%    $ -    0.300% $ - [06]
7. Total (sum of lines 5 and 6)     $ - [07]

### SCHEDULE B - TAX ON ASSUMED REINSURANCE PREMIUMS
8. Gross Assumed Reinsurance (Annual Report, Pg 8, Column 2+3)     $ - [08]
9. First $20 million of reinsurance premiums on line 8 $ -    0.225% $ - [09]
10. Next $20 million of reinsurance premiums on line 8 $ -    0.150% $ - [10]
11. Each subsequent dollar of reinsurance on line 8 x .1 $ -    0.050% $ - [11]
12. Total (sum of lines 9 through 11)     $ - [12]

### SCHEDULE C - CALCULATION OF TOTAL AMOUNT DUE
13. Total Premium Tax (sum of lines 7 and 12) If greater than $100,000 then use $100,000.     $ - [13]
14. Captives licensed during 2011, the minimum tax is prorated using date licensed.     $ - [14]
     (1st qtr- $5,000; 2nd qtr $3,750; 3rd qtr $2,500; 4th qtr $1,250)
15. Captives licensed prior to 2011, the minimum premium tax is **$5,000**     $ 5,000 [15]
16.    This Captive was licensed for less than 1 month in 2013. (5000 divided by 12=416.67)     $ 417
16. Minimum Tax per § 33-28-201(3), MCA (line 14 or 15)     $ 417 [16]
17. Tax Due (greater of line 13 or line 16)     $ 417 [17]
18. License Annual Renewal Fee of $300 per § 33-28-102(4)(b),     $ - [18]
19. Total due to: Commissioner of Insurance (sum of lines 17 and 18)     $ 417 [19]

| This is a true report of premiums written in the past calendar year and complies with the requirements of applicable law. | Name of Officer (Type or print) | JOHN H. SCHNEIDER, MD |
|---|---|---|
| *[signature]*    1/17/2013 <br> Signature of Officer      Date | Job Title of Officer | CHIEF EXECUTIVE MANAGER |