UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MONTANA

In re

**JOHN HENRY SCHNEIDER**,

Debtor.

Case No. **14-61357-7**

# O R D E R

At Butte in said District this 28th day of April, 2016.

In this Chapter 7 bankruptcy, after due notice, the Court held a hearing on April 26, 2016, in Billings on: (1) the Trustee's Motion for Approval of Compromise Settlement Including Approval of Sale Free and Clear filed March 4, 2016, at docket no. 216; (2) the Trustee's Motion Pursuant to F.R.B.P. Rules 9019(a) and 7041 to Approve Settlement and Dismissal of Adversary Complaint to Deny Debtor's Discharge filed March 4, 2016, at docket no. 220; (3) the Trustee's objection to Meridian's request for judicial notice; and (4) Debtor's objection to a request for judicial notice filed by Meridian Surgical Partners - Montana, LLC and Meridian Surgical Partners, LLC, which objection was accompanied by a request to be heard. The Chapter 7 Trustee, Joseph V. Womack of Billings, Montana, appeared at the hearing with counsel, Trent M. Gardner of Bozeman, Montana; Debtor John Henry Schneider was represented at the hearing by James H. Cossitt of Kalispell, Montana; Michelle R. Schneider, Schneider Management, LLC and Schneider Limited Partnership, LLC were represented by Mark D. Parker of Billings, Montana; the Office of the United States Trustee was represented by Arron G. York of Great Falls, Montana; Meridian Surgical Partners - Montana, LLC and Meridian Surgical Partners,

1

LLC were represented by Doug James and Joseph A. Soueidi of Billings, Montana; objecting creditors Annette Thomas, Harley Morrell, Scherry Lee, Beverly Curtis, Harry A. Knopp and Jo Anne Dewards Knopp, the Estate of Russell Monaco, Mike Green, and Walt Morris were represented by James A. Patten of Billings, Montana. Joseph Womack, Michael Kakuk, Michelle Schneider and Debtor testified. Malory Monaco read a letter she wrote on December 2, 2011, into the record. *See* Exhibit PI-7, docket no. 300.

Debtor filed his voluntary Chapter 7 bankruptcy petition on December 4, 2014 and, thereafter, filed his schedules, statement of financial affairs and other documents on December 12, 2014. In his summary of schedules, Debtor lists his assets as having a value of $20,938,720.78, and lists liabilities totaling $5,558,993.01. Debtor's assets include an undivided one-half interest in a home at 3253611 Tommy Armour Circle in Billings with a total value of $625,000, a retirement account valued at $1,598,308.42, a $15 million breach of contract claim against Meridian Healthcare,[1] a $3 million breach of contract and errors and omissions claim against Org, LLC and Brenda Olsen, and a $335,000 breach of contract and errors and omissions claim against Rocky MT Medical Services.

On January 16, 2015, the Trustee filed a motion for turnover, requesting entry of an order directing Debtor to turnover a lengthy list of documents which should have been turned over fourteen days prior to Debtor's § 341(a) meeting of creditors scheduled for January 23, 2015. Debtor responded on February 2, 2015, that he had provided the Trustee with approximately sixteen bankers boxes of paper documentation and several thousand pages of documents in

---

[1] After assessing the $15 million claim, the Trustee has concluded that such claim has little potential value for the Estate.

electronic form. Additional § 341(a) meetings of creditors were held. The Trustee also conducted numerous Rule 2004 examinations of various parties and discovered assets not disclosed by Debtor in his schedules, including approximately $500,000 that Debtor deposited with U.S. Bank in an account he set up in his sister's name. Information gathered during his investigation prompted the Trustee to file an adversary proceeding against Debtor's sister, Kathleen T. Burrows, seeking to set aside Debtor's transfer of real property to Burrows, which property Debtor had allegedly purchased for $325,000. The Trustee commenced another adversary proceeding against Debtor, Schneider Limited Partnership, Schneider Management, LLC, Medport, LLC, BSC, LLC, Michelle R. Schneider, and others. *See* Adversary Proceeding No. 15-00015 ("Collection AP"). In that action, the Trustee alleged that Debtor hid assets through a series of transfers from Schneider Limited Partnership to various other entities. The Trustee commenced a separate adversary proceeding on June 24, 2015, objecting to the discharge of Debtor pursuant to 11 U.S.C. § 727, and alleging that Debtor violated multiple provisions of 11 U.S.C. § 727. Alleged violations include transferring, removing or concealing his property or estate property within one year prior to the filing of the petition and after the filing of the petition with the intent to hinder, delay or defraud his creditors or the trustee, and making material false answers or omissions during his § 341(a) meeting of creditors and in connection with his schedules. *See* Adversary Proceeding No. 15-00020 ("Discharge AP").

  Following a two day mediation, the parties of the Collection AP and the Discharge AP reached a settlement of each proceeding. Debtor and the Trustee propose to settle the Discharge AP for approximately $425,000. The Trustee proposes to settlement the Collection AP for what the Trustee estimates to be close to $2 million worth of real estate, $240,000 in cash and

approximately $61,500 from a tax refund. Approval of the Collection AP settlement is not opposed, but approval of the Discharge AP is opposed by numerous parties, including various creditors[2] and the United States Trustee. Performance of the Collection AP settlement is contingent on approval of the Discharge AP settlement.

Compromises and settlements are governed by FED.R.BANKR.P. 9019(a), which provides in pertinent part: "On motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement . . . ." The bankruptcy court is vested with considerable discretion in approving compromise agreements and settlements. *Goodwin v. Mickey Thompson Entm't Grp., Inc. (In re Mickey Thompson Entm't Grp., Inc.)*, 292 B.R. 415, 420 (9th Cir. BAP 2003). Even so, the compromise must be fair and equitable, in the best interests of the estate, and reasonable. *Id.* In *In re Schrock*, 9 Mont. B.R. 414, 416-417 (Bankr. D. Mont. 1991), this Court addressed the test for approving compromise agreements and settlements under Rule 9019(a):

> In evaluating a settlement, the Court must consider:
>
>> '(a) The probability of success in the litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; (d) the paramount

---

[2] Annette Thomas, Harley Morrell, Scherry Lee, Beverly Curtis, Harry A. Knopp and Jo Anne Dewards Knopp, the Estate of Russell Monaco, Mike Green, and Walt Morris are a group of creditors who object to approval of the Collection AP settlement. All but one of the foregoing claimants assert medical malpractice claims against Debtor. The Trustee and Debtor have filed objections to the claims filed by the foregoing claimants on grounds the claims are contingent, unliquidated, overstated or disputed. Debtor estimates that the roughly $11 million in asserted unsecured claims are only worth $1 million to $1.5 million. After characterizing the medical malpractice claims as "profoundly" overstated, Debtor, at the April 26, 2016, hearing, testified that the Estate of Russell Monaco's $2 million claim stems from Russell Monaco's death at the age of 47 while under Debtor's care. As to that claim, Debtor admitted that his Wyoming medical license was suspended because of the care rendered to Mr. Monaco by Debtor and his physician's assistant.

4

> > interest of the creditors and a proper deference to their reasonable views in the premises.' [*Martin v. Kane (In re A & C Props.),* 784 F.2d 1377, 1381 (9th Cir. 1986) ("A & C factors")].
>
> [*Woodson v. Fireman's Fund Ins. Co. (In re Woodson)*, 839 F.2d 610, 620 (9th Cir.1988)] (additional citation omitted).
>
> *See also In re MGS Marketing*, 111 B.R. 264 (9th Cir. BAP 1990). In addition to the four prong test set forth in *A & C Properties*, it is also well established that the law favors compromise. *In re Blair*, 538 F.2d 849, 851 (9th Cir. 1976). In accordance with that principle, Bankruptcy Rule 9019(a) gives this Court broad authority to approve a compromise or settlement. *In re General Store of Beverly Hills*, 11 B.R. 539, 542 (9th Cir. BAP 1981). The determination of whether to approve a compromise or settlement is a matter within the sound discretion of this Court. *Providers Benefit Life Insurance Co. v. Tidewater Group, Inc.*, 13 B.R. 764, 765 (Bankr. N.D.Ga. 1981). *See also, In re Lions Capital Group*, 49 B.R. 163, 175-76 (Bankr. S.D. N.Y. 1985).

The Trustee, as the party seeking approval of the settlement, bears the burden of showing that the settlement is fair and equitable, in the best interests of the estate, and reasonable. *In re Mickey Thompson*, 292 B.R. at 420. As explained further in *A & C Properties*:

> The purpose of a compromise agreement is to allow the trustee and the creditors to avoid the expenses and burdens associated with litigating sharply contested and dubious claims. The law favors compromise and not litigation for its own sake, and as long as the bankruptcy court amply considered the various factors that determined the reasonableness of the compromise, the court's decision must be affirmed.

*Id*. at 1380-81 (citations omitted). Considering all relevant factors, the Court finds that the Collection AP settlement satisfies the requirements of *In re A&C Properties*. The Court, therefore, is inclined to approve that settlement. However, as structured and given the pending objections, the Court has serious doubts as to whether the Discharge AP settlement satisfies the requirements of *In re A&C Properties* and is inclined to deny approval of the Discharge AP settlement, which will render the Collection AP settlement null and void. Before doing that, the

Court wants to give the parties, including all objecting parties, time to discuss whether a global settlement is possible. That said, time is of the essence, and these matters must be brought to conclusion as soon as possible, particularly given Debtor's testimony that he will expend every resource necessary and liquidate assets to the fullest extent possible to defend both the Collection AP and the Discharge AP. Accordingly,

IT IS ORDERED that the parties shall have until **May 6, 2016**, to reach a global resolution as to the Collection AP settlement and the Discharge AP settlement, after which time, if a global resolution is not reached, the Court will enter a memorandum of decision and order on approval or disapproval of the pending settlements.

IT IS FURTHER ORDERED that because the Court is not inclined at this time to approve the Discharge AP settlement, and because discovery in that matter closed on April 1, 2016, the Court will enter a separate order in Adversary Proceeding No. 15-00020 rescheduling that matter for trial **May 25, 26 and 27, 2016, in Billings**.

/s/ Ralph B. Kirscher
Honorable Ralph B. Kirscher
Chief U.S. Bankruptcy Judge