Joseph V. Womack
**WALLER & WOMACK, P.C.**
Suite 805 First Bank Building
303 North Broadway
Billings, Montana 59101
Telephone: (406) 252-7200
Facsimile: (406) 252-4266
Email: jwomack@jvwlaw.com
Attorney No. 2641
Attorneys for Trustee

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MONTANA**

| | |
|---|---|
| In Re:<br><br>**JOHN HENRY SCHNEIDER**<br><br>Debtor | Case No. **14-61357** |

**FINAL APPLICATION FOR PROFESSIONAL FEES (ATTORNEY) AND COSTS**
**(Goetz, Baldwin & Geddes and Waller & Womack)**

**THE UNDERSIGNED TRUSTEE,** Joseph V. Womack, hereby makes application for final approval of attorney fees and costs in this case.

### I.     INTRODUCTION

Trustee makes application for final approval of: 1) the previously approved interim award of fees (Doc# 472) in the total amount $260,142.93 and total costs in the amount of $13,544.21 to co-counsel, Goetz, Baldwin & Geddes, P.C. ("Goetz Law Firm") and Waller & Womack, P.C. ("Waller & Womack") (jointly referred to herein as "Professionals"), split per the terms of employment with $208,114.34 (32% contingency fee) to Goetz Law Firm and $52,028.59 (8% contingency fee) to Waller & Womack and costs in the amount of $13,544.21 to the Goetz Law Firm, for services rendered and costs incurred from February 20, 2015 through November 29, 2016 ("First Application Period"); and 2) new fees of $344,000.00 (reduced from the original

contingency amount by $100,000.00, per the Settlement Agreement and Release (Doc#: 340-1)) and total new costs of $2,488.68 with the fees and costs split per the terms of employment. Under the original fee agreement a total of $440,000.00 would have been due with $335,200.00 due Goetz Law Firm and $88,800.00 to Waller & Womack. With a reduction of $80,000.00 per Doc#: 340-1, $275,200 is requested for the Goetz Law Firm and with a reduction of $20,000.00 per Doc#: 340-1, $68,800.00 is requested for Waller & Womack and costs in the amount of $2,488.68 is requested for the Goetz Law Firm, for services rendered and costs incurred from January 12, 2017, through February 14, 2018 (the "Second Application Period").

This application is for all attorney fees owed to the Goetz Law Firm and to Waller & Womack to date, whether the services were provided on a contingency basis or on an hourly fee basis. No further attorney fee applications are contemplated for either professionals or their firms unless objections to this fee application are filed. In such event Applicant will likely seek approval to hire outside counsel to represent applicant at any hearings scheduled in this matter and any appeals from the Court ruling on the fee application and objections to it.

Both Professionals have elected to waive any hourly fees owed and seek solely the contingency fee owed for three reasons: first, in order to increase the distribution to unsecured creditors of the estate; second, because the intertwining of legal services in this complex case makes it difficult to segregate hourly and contingency fee legal services; and third, this was virtually a no asset case at its inception and hourly work was effectively "hourly contingency work" anyway. All of the legal services helped result in a large recovery of assets and the elimination of a large unsecured claim to be paid by the estate, thereby increasing the amount that will be paid to the allowed unsecured creditors. The attorneys are sensitive to the Court's obligation to review professional fees and their ethical obligation to be reasonable when seeking approval of

fees in light of the size of the estate and its claims. In order to meet this obligation the attorneys have submitted this application for compensation for all services provided to date.

Applicant previously submitted a final fee application for almost the same amounts requested in this application. Applicant withdrew it after receiving questions and comments about the application from the office of the US Trustees office and attorneys representing some creditors of the estate. This expanded application is intended to deal specifically with the concerns and questions raised by the US Trustee's office including justification for the Trustee receiving attorney fees for work done and the impact of the fees requested on the distribution to unsecured creditors.

The group of unsecured creditors that expressed concerns are generally described as the personal injury plaintiffs (PI Claimants). The PI Claimants are represented by attorneys on a contingency basis. The amount recovered for the PI Claimants will impact the amount the PI Claimant attorneys and their clients will receive, so they are motivated to cause the attorney fees (and Trustee fees) to be reduced as much as possible in order to increase their respective recoveries. Applicant is not aware of the legal or factual basis of their objections.

The compensation requested is based on the customary compensation charged by comparably skilled practitioners in cases other than cases under the Bankruptcy Code. Applicants certify that none of the compensation or reimbursement for costs applied for in this application will be shared with any entity in violation of 11 U.S.C. §504. A complete accounting is attached for all new costs incurred in the amount of $2,488.68 for which reimbursement is requested. All costs are computed at actual cost incurred, except for any mileage at the federal mileage rate allowed. Applicants certify that all services for which compensation is requested were performed for or on behalf of the estate and not on behalf of a creditor or any other entity; were performed in

connection with this bankruptcy case or proceedings related thereto; and were not for services in any other matter.

Applicants further certify that all services performed were in connection with the performance by the Trustee of the duties prescribed for such entity by the Bankruptcy Code, the Federal Rules of Bankruptcy Procedures, or the Local rules, were otherwise beneficial to the estate, or were rendered pursuant to an order of this Court. This is a final application and no additional attorneys' fees or costs remain.

The Professionals have been given an opportunity to review this Application and approve the requested amount.

## APPLICABLE LAW

Notwithstanding the absence of opposition to a fee application, the Court has an independent obligation to review each application to evaluate the propriety of the compensation requested. *In re GBR Ductmasters, Inc.* Case No. 14-60427-7, filed in the United States Bankruptcy Court for the District of Montana, Doc#:82, citing *In re Busy Beaver Bldg. Ctrs., Inc.*, 19 F.3d 833, 841 (3d Cir. 1994); *In re Wildman*, 72 B.R. 700, 701 (Bankr. N.D. Ill. 1987).

> In *Busy Beaver*, the court explained:
>
>> [T]he integrity of the bankruptcy system ... is at stake in the issue of a bankruptcy judge's performance of the duty to review fee applications *sua sponte*. The public expects, and has a right to expect, that an order of a court is a judge's certification that the result is proper and justified under the law.... Nothing better serves to allay [public perceptions that high professional fees unduly drive up bankruptcy costs] than the recognition that a bankruptcy judge, before a fee application is approved, is obliged to [review it carefully] and find it personally acceptable, irrespective of the (always welcomed) observation of the [United States trustee] or other interested parties.

*Busy Beaver*, 19 F.3d at 841 (*quoting In re Evans*, 153 B.R. 960, 968 (Bankr. E.D. Pa. 1993)).

Compensation based upon a contingency fee is contemplated and authorized under the Bankruptcy Code. 11 U.S.C. § 328(a). The Bankruptcy Court for the District of Montana has previously recognized the use of alternative methods of calculating fees:

> The "lodestar" method, multiplying a reasonable number of hours by a reasonable hourly rate, is the primary but not exclusive method of calculating fees. *Unsecured Creditors' Committee v. Puget Sound Plywood, Inc. (Puget Sound)*, 924 F.2d 955, 960 (9th Cir. 1991). In *Puget Sound*, the Ninth Circuit affirmed an award based on an alternative formula based on a percentage of what the applicant recovered for the estate instead of the "lodestar" method. *Id.* at 961.

*In re Foodservice Equip., Inc.*, 14 Mont. B.R. 512, 513 (1995). The Bankruptcy Court for the District of Montana approves the use of contingency fee awards to attorneys in bankruptcy cases if the employment and fee arrangements are properly disclosed and approved. That is the case here: the employment in this case was properly disclosed and approved as discussed.

## II.   APPLICATIONS FOR CONTINGENCY EMPLOYMENT

The Debtor, herein, filed a Chapter 7 bankruptcy petition on December 4, 2014. Joseph V. Womack was appointed Trustee of the Estate. Trustee filed an application for appointment of Professionals as Co-counsel for the estate on a contingency fee basis on or about February 19, 2015 (Dkt#: 50) ("Feb Application"). Professionals were employed to serve as co-counsel to provide legal services in pursuing various adversarial and contested claims that the Debtor had identified on his schedules. Professionals were also employed to pursue other claims that had not been and would be identified by the Trustee during his investigation of ongoing claims, and the existence of claims not fully stated in the application. The attorneys were not only to pursue prosecution of the claims as the Trustee deemed appropriate but also to assist in evaluating and identifying claims. This application is the basis for this Final Application for Attorney Fees and Costs submitted to the Court.

As represented to the Court at the time of retention in the Feb Application, Professionals were retained on a contingency fee basis of 40% of the gross amount less secured claims and offsets, if any, of all sums recovered or the value of property recovered for the benefit of the Estate through settlement or judgment, with 32% to Goetz Law Firm and 8% to Waller & Womack. Additionally, Trustee proposed to reimburse said law firms for all reasonable costs and expenses incurred by them in their representation of the Trustee and Estate, including retention of any accountants, investigators, consultants, experts and other professionals reasonably necessary in attorneys' judgment. This employment application and modifications to the application made over the course of the case is the foundation for the final application for attorney fees and costs now before the Court.

No objections were filed to the application. An order appointing Professionals as co-counsel on a contingency basis for the estate was entered by the Court on February 20, 2015 (Doc#: 51). Professionals commenced services on a contingency basis on February 20, 2015.

### III.   APPLICATIONS FOR HOURLY FEE EMPLOYMENT

In addition to their retention on a contingency basis both professionals were retained on an hourly basis pursuant to other applications in order to provide legal services for non-contingency matters where they would be compensated on an hourly basis.

#### A.   Initial Hourly Application

Trustee filed an Application to Approve Employment of Professional on or about December 16, 2014 (Doc#: 18) ("Dec. Hourly App"), wherein Joseph V. Womack and Waller & Womack, PC were retained to provide general legal services on an hourly basis with Joseph V. Womack to be compensated at the rate of $300.00 per hour and paralegals to be compensated at the rate of $95.00 per hour. It has been Trustee's practice to hire himself in all cases for such

general legal work of the estate and for contested proceedings that do not result in a monetary award for the estate. These include actions to deny or revoke the discharge of a debtor, and complex claim analysis and objections, both of which occurred in this case.

An order approving the Dec. Hourly App and the employment of Womack and Waller & Womack on an hourly basis was entered by the Court on December 16, 2014 (Doc#: 19). Womack and Waller & Womack commenced services on an hourly basis immediately after approval of their employment.

B.  Hourly Application to Enforce Purchase Agreement

Trustee filed an Application to Approve Employment of Co-counsel on or about September 26, 2017 (Doc#: 546) (Sept. Hourly App), wherein Waller & Womack, PC and Goetz, Baldwin & Geddes, PC were retained for the purpose of filing suit and enforcing the fully-executed Purchase Agreement signed by Rod Griffeth on September 12, 2017, for the purchase of the property in Powell, Wyoming, known as the Whispering Winds Ranch. The terms of employment of Professionals, subject to the approval of the Court were costs plus:

Hourly rates:
Joe Womack, attorney:       $300/hr
Trent Gardner, attorney:    $300/hr
Jeff Tierney, attorney:     $200/hr
Lynsey Ross, paralegal:     $125/hr
Alisia Duganz, paralegal:   $100/hr

An order approving the Sept Hourly App employment of Waller & Womack and Goetz, Baldwin & Geddes, PC on an hourly basis to pursue the adversary proceeding against Griffeth was entered by the Court on October 4, 2017 (Doc#: 548).

## IV.  PREVIOUS APPLICATIONS FOR COMPENSATION

This application is the second and final application filed for these Professionals in this proceeding, and the following is a complete schedule of all prior applications submitted to the Court for approval:

<u>First Interim Application</u>: filed November 30, 2017 (Doc#: 470). Fees of $260,142.93 and Costs of $13,544.21, no objections filed and approved by the Court on December 20, 2017 (Docket No. 472).

To date, Professionals have received as compensation the following amounts paid by the Estate:

| <u>Payee</u> | <u>Date Paid</u> | <u>Amount Paid</u> |
|---|---|---|
| Goetz Law Firm | 12/20/2016 | $ 13,544.21 – costs |
| Goetz Law Firm | 01/09/2017 | $208,114.34 – fees |
| Waller & Womack | 12/20/2016 | $ 52,028.59 – fees |

The First Interim Application was based on the performance of professional services by Professionals for the following matters with total recovery, contingency percentage and calculated compensation described below:

| <u>Description of Matter/Asset</u> | <u>Total Recovery</u> | <u>Contingency</u> | <u>Compensation</u> |
|---|---|---|---|
| Resolution of AP 15-00008, relating to the fraudulent transfer of the Molt Property. Motion and Order (Doc#: 198, 202) | $75,000 | 40% | $30,000.00 |
| Assets recovered and liquidated from the resolution of AP 15-00015, seeking substantive consolidation of various entities and recovery of various fraudulent transfers. Motion and Order (Doc#: 340, 426): | | | |
|    Sale of the Billings House, Paragraph 2.a. of Settlement Agreement (Doc#: 340-1) | $333,000.00 | 40% | $133,200.00 |

| | | | |
|---|---|---|---|
| Monies from Goetz, Baldwin & Geddes P.C. Trust Account, Paragraph 2.f. of Settlement Agreement (Doc#: 340-1) | $242,357.32 | 40% | $96,942.93 |

Total Recovery for First Application Period:    $650,357.32

Total compensation requested for the First Application Period:  $260,142.93.

## V. FEES AND COSTS REQUESTED PER THIS SECOND AND FINAL APPLICATION

This second and final application is based on the performance of professional services by Professionals for the following matters with total recovery, contingency percentage and calculated compensation described below:

| Description of Matter/Asset | Total Recovery | Contingency | Compensation |
|---|---|---|---|
| Assets recovered and liquidated from the resolution of AP 15-00015, seeking substantive consolidation of various entities and recovery of various fraudulent transfers. Motion and Order (Dkts # 340, 426): | | | |
| Sale of the Whispering Winds, Ranch Paragraph 2.c-d of Settlement Agreement (Dkt #340-1) | $1,050,000.00 | 40% | $420,000.00 |
| Assets recovered and liquidated from the resolution of AP 17-00021-JDP, seeking damages for breach of the Settlement Agreement and other assets concealed by Debtor. | $60,000.00 | 40% | <u>$24,000.00</u> |

Total Recovery for Second Application Period: $1,110,000.00

Total compensation per terms of original employment agreement at 40%:  $444,000.00.

A reduction of $100,000.00 was agreed to per paragraph 3 of the Settlement Agreement if the total recovery from the settlement is less than $2,000.000.00. The total recovery from the Settlement Agreement is less than $2,000,000.00, so Applicant has reduced the fees requested by

$100,000.00. This provision was included because the estate was agreeing to take the Whispering Wind as part of the settlement for AP 17-00021-JDP and there was a recognition that sale price received would not be as much as was hoped for.

The amount due Goetz Law Firm would have been $355,200.00. This amount has been reduced by $80,000.00 so that amount due the Goetz Law Firm is $275,200.00.

The amount due Waller & Womack would have been $88,800.00. This amount has been reduced by $20,000.00 so that the amount due Waller & Womack is $68,800.00. Because the attorneys have reduced their fees by $100,000.00 and request approval of total fees of $604,162.93, including the interim fees previously approved, an actual contingency fee award of 34.32%, rather than 40%, is requested.

Total new compensation requested: $344,000.00 to be split as set forth above.

When the Trustee filed the previous final fee application that was withdrawn, the UST's office questioned the Trustee/Co-Counsel regarding whether or not he did any legal work or made any legal contributions to the contingency fee adversarial cases such that his sharing of the contingency is justified. The undersigned represents and certifies that he did significant legal work on the contingency fee adversarial cases.

With respect to direct involvement in the adversaries, Trustee was involved in every step of the proceedings that was distinct from trustee work. Trustee and staff prepared discovery documents for the adversaries. Trustee was involved in drafting all pleadings, discovery and settlement documents and made substantive legal additions and changes to documents. Trustee performed legal research with regard to claims and the positions. Trustee performed legal work required by the Settlement Agreement for AP 15-00015 including settlement of the Meridian Claim for $3,000,000.00 filed against the Estate.

The lead attorney in the contingency adversary cases was Trent Gardner and that is why he received the majority of the contingency award. He did the majority of the work directly associated with the litigation. However, as the Trustee I am more than comfortable with the amount of legal work that I provided on all of the cases involving recovery of assets that are the basis for the contingency fee.

In addition, as noted, both attorneys have elected to waive their claim for hourly fee compensation even though they believe they are entitled to and earned those fees. When that work is considered as part of the contingency fee compensation it is clear that both attorneys earned and deserve the compensation that they seek here.

## VI.   HOURLY FEE WORK

A.   <u>Introduction</u>

As noted earlier, in addition to the legal services provided in the above-described adversary proceedings, Goetz Law Firm and Waller & Womack were hired on an hourly basis for other legal work, including general legal work for the estate, objections and resolution of proofs of claims and Adversary Proceedings AP No. 15-00020 and AP No. 17-00032.

Applicants have elected to waive any claim to the hourly fees that they may be entitled for that work for the reasons stated in the introduction. The attorneys also feel that it is simply fair and equitable to reduce their fees in order to protect the integrity of the system. A discussion of the areas of hourly fee work that have been waived follow.

B.   <u>Discharge Adversary (AP 15-00020)</u>

In AP No. 15-00020 the Trustee sued to deny the Debtor his discharge. The Debtor ultimately waived his discharge. Trustee's timesheet for this hourly is attached hereto as Exhibit A and shows billable time of $18,983.00.

Trustee is not seeking his hourly fees for AP No. 15-00020 even though this work is most clearly distinguishable from other work relative to the contingency fee adversary proceedings. However, the complaint to deny discharge became intertwined with the contingency fee work performed in conjunction with work on AP 15-00008 and AP 15-00015. Many allegations of the Complaint to Deny Discharge were taken from the allegations of the Complaint in AP 15-00015. Additional allegations tailored to a discharge complaint were added and other revisions made. When mediation took place to try and settle AP 15-00015, the parties ended up linking the discharge issues of AP No. 15-00020 in order to try and settle AP 15-00015. So, the work in the discharge adversary was intertwined with the contingency work to a certain extent. As already noted, the attorney fees are high in this case and waiver of the hourly attorney fees is equitable and increases the distribution to unsecured creditors.

    C.  <u>Specific Performance Adversary (AP 17-00032)</u>

The Whispering Winds Ranch was the principal asset recovered as part of the settlement of AP No. 15-00020. In AP No. 17-00032 the Goetz Law Firm and Waller & Womack were hired to sue the buyer of the Whispering Winds Ranch for specific performance of the buy sell agreement signed by the buyer after an online auction of the property. Trent Gardner ended up doing the vast majority of the work in AP No. 17-00032 while the Trustee continued to deal with other administrative aspects of the case, such as reviewing title reports for the sale, preparing the deed for the sale and providing all documents required by the title company to complete the sale. The Goetz Law Firm has agreed to waive hourly attorney fees incurred in that case, which were in the amount of $4,740.00, as set forth in the billing statement attached as Exhibit B.

The reasons for waiving the AP No. 17-00032 fees are essentially the same as those for waiving the fees for AP No. 15-00020. Enforcement of the buy sell agreement of the Whispering

Wind Ranch was integral to the recovery of funds for the creditors as part of the settlement agreement and increases the recovery to the unsecured creditors.

    D.  <u>General Legal Work</u>

There are a number of other areas that normally would have been billed on an hourly basis by the Trustee that have been waived in this case. Those areas are more complex objections to proofs of claims, the settlement of such objections, the preparation of motions and orders as part of the administration of the case, including motions to sell free and clear, and motions to compel production of documents.

Numerous hearings involving objections to claims and resolution of those objections were conducted that went far beyond the normal trustee work relating to claims objections and resolutions. Motions to sell property under 363(f), including the review and analysis of title reports and resolution of title issues; multiple stipulations filed with the Court that were negotiated and drafted by the attorneys and submitted to the Court for approval, and Trustee's involvement as attorney for the Estate in the Meridian Arbitration and Settlement of Claims between the Debtor, the Estate and Meridian Surgical Partners are all hourly fee areas where the Trustee is waiving his right to hourly fees in this fee application. To date, almost 600 docket entries have been made in this case during a period of over three years.

    E.  <u>Meridian Claims and Arbitration</u>

Sometime in 2014 Meridian Surgical Partners (MSP) & Meridian Surgical Partners Montana (MSPM) and John Schneider commenced and asserted claims against each other in case # 65-20-1400-0026 pending with the American Arbitration Association ("the MSP arbitration case").

On April 7, 2015, MSP & MSPM filed Proof of Claim #10 (POC 10) asserting a claim of $3,000,000.00 against the estate based on the arbitration case (see POC 10-1, page 4/4). Because the arbitration case was ongoing it was necessary for the Trustee to be involved in the Arbitration, including attending depositions, and review all pleadings and motions filed in the arbitration. Without settlement of the Arbitration proceeding there was a strong possibility that a judgment in excess of $3,000,000.00 could have been entered against the estate, severely diluting the money pool available for unsecured creditors. It was the Trustee's legal opinion as the attorney for the estate that in fact the claim filed by Schneider against MSP and MSPM in the arbitration was worthless. If forced to participate in the arbitration the Trustee estimated that the estate would have to hire outside counsel to litigate the arbitration hearing at a cost of some $50,000.00 in attorney fees.

After attorney-to-attorney negotiations between Womack and Doug James, the attorney for both Meridian entities, the claim was settled per the Motion to Approve Compromise under Rule 9019 (Doc#: 342), approved by Order dated May 24, 2016 (Doc#: 384). The claim was settled by the estate paying Meridian $6,500.00. All of the legal work relative the Meridian Arbitration and settlement of this claim was done by the Trustee as attorney for the Estate.

As part of the settlement between the Trustee and Meridian, the arbitration claim filed by Meridian against Debtor John Schneider was dismissed. However, Schneider Limited Partnership retained its claims against Meridian and prosecuted those claims in the arbitration hearing. Schneider Limited Partnership was awarded nothing on its claim and Meridian had an award of over three million dollars entered in its favor against Schneider Limited Partnership.

Trustee has completed a comparison of the anticipated distribution to unsecured creditors based on the current estate, versus distribution if the $3,000,000.00 claim had not been settled and

the anticipated distribution given allowance of the Meridian Claim. Exhibit C shows Trustee's estimated distribution of the case to unsecured creditors based on actual known and estimated costs. Exhibit D shows Trustee's estimated distribution if the estate had not settled the Meridian matter: the estate would have retained the $6,500.00 it paid to Meridian; costs of approximately $50,000.00 would have been incurred to participate in arbitration; and Meridian would participate in distribution to unsecured creditors on its $3,000,000.00 claim.

The actual distribution to the unsecured creditors is anticipated to be approximately 7.79% of their claims (Exhibit C)—however, without settlement of the Meridian claim, unsecured creditors would only receive 5.10% of their claims (Exhibit D) and Meridian would receive the bulk of the payment at almost $153,000.00. This results in a payment increase of almost $54,000.00 to the highest unsecured claim (POC 21) of the Estate of Russell Monaco by settlement of the Meridian claim.

### VII. IMPACT OF ATTORNEY WORK AND FEES ON DISTRIBUTION IN CASE AND STATUS OF CASE

Virtually all of the assets recovered in this case were not disclosed by the Debtor and were recovered as a result of the work of the attorneys and Trustee. An analysis of the schedules filed by the Debtor shows that this was virtually a no asset case. Debtor listed over 18 million dollars in contingent and unliquidated claims against Meridian Healthcare; Org, LLC; Brenda Olsen; and Rocky MT Medical Services. However, after investigating these claims, Trustee concluded that these claims were worthless and in the case of Meridian, was a liability that Trustee had to dispose of to prevent an additional massive claim being allowed against the estate.

All priority tax claims were paid at the time of the interim distribution on June 1, 2017. The remaining claims shown on Exhibit C are allowed claims and the proposed payment is the Trustee's best estimate of what will be paid to them at the time of final distribution. Trustee notes

that the estate has already distributed $177,482.42 to the MDOR on its unsecured priority tax claim and estimates that there will be roughly $568,928.99 available for distribution to unsecured, non-priority claimants (Exhibit C). This is a total distribution to unsecured claimants of approximately $746,411.41; approximately three-quarters of a million dollars. Certainly this is a "meaningful distribution".

The Trustee was also successful in getting the Debtor's discharge denied with no attorneys' fees being charged by the Trustee for this legal work. This allowed creditors the opportunity to pursue the Debtor for any unpaid portion of their claim, should they wish to do so. Originally, the PI claimants were very concerned that the Debtor not receive his discharge so that they could pursue him later, outside of the Bankruptcy. In the end, they waived their right to pursue Schneider outside the bankruptcy in return for not having to prove up their claims.

The Trustee recently completed the sale of the last physical asset of the estate, a Harley-Davidson Motorcycle. The Debtor finally turned the motorcycle over to the Trustee after fraudulently concealing it and lying about its whereabouts. Debtor turned it over as part of settlement of the criminal action brought against him by the US Attorney's office after the Trustee referred this case for criminal action to the UST's office.

One final tax return must be filed but there will not be any tax liability associated with that return. The Trustee estimates that additional fees of $1,000.00 for the estate accountant will be needed for the filing of the return.

### Criminal Matter

The Debtor has pled guilty to criminal bankruptcy fraud for concealment of $309,686.00. Attached as Exhibit E is a copy of the plea agreement filed in the United States District Court for the District of Montana. Debtor's sentencing hearing is currently scheduled for August 15, 2018.

Attached hereto as Exhibit F is the letter provided by the Trustee to the Federal District Court regarding the Debtor's sentencing. The US attorney's office is seeking restitution to the Bankruptcy estate, which will then be distributed to the unsecured creditors of the estate. It is the Trustee's understanding that the US Attorney is seeking restitution of the full $309,686.00 that Schneider has admitted he concealed from the Trustee. Collecting and administering any restitution will result in a delay of the closing of the estate.

## VIII.   CONCLUSION

Given all that was done as shown above, Applicants believe the contingency fee requested is fully justified and supported by the legal work required and provided in this case. This is particularly true since it has been reduced and includes the hourly work discussed.

**WHEREFORE**, applicant prays that this Court enter an Order awarding Professionals final approval of: 1) the previously approved interim award of fees (Doc# 472) in the total amount $260,142.93 and total costs in the amount of $13,544.21 to co-counsel, Goetz, Baldwin & Geddes, P.C. ("Goetz Law Firm") and Waller & Womack, P.C. ("Waller & Womack") (jointly referred to herein as "Professionals"), split per the terms of employment with $208,114.34 (32% contingency fee) to Goetz Law Firm and $52,028.59 (8% contingency fee) to Waller & Womack and costs in the amount of $13,544.21 to the Goetz Law Firm, for services rendered and costs incurred from February 20, 2015 through November 29, 2016; and 2) new fees of $344,000.00 and total new costs in the amount of $2,488.68 to co-counsel, Goetz Law Firm and Waller & Womack, P.C. ("Waller & Womack") with the fees and costs split per the terms of employment and the Settlement Agreement. With a reduction of $80,000.00 per Doc#: 340-1, $275,200 is requested for the Goetz Law Firm. With a reduction of $20,000.00 per Doc#: 340-1, $68,800.00 is requested for Waller & Womack. Costs in the amount of $2,488.68 is requested for the Goetz Law Firm.,

**DATED** this 8th day of August, 2018.

                **WALLER & WOMACK, P.C.**

                By: /s/ Joseph V. Womack
                   Joseph V. Womack
                   Ch. 7 Bankruptcy Trustee