Trent M. Gardner (I.D. # 7477)
Jeffrey J. Tierney (I.D. # 12989)
**GOETZ, BALDWIN & GEDDES, P.C.**
35 North Grand
P.O. Box 6580
Bozeman, MT  59771-6580
Phone: (406) 587-0618
Fax:   (406) 587-5144
Email: tgardner@goetzlawfirm.com
       jtierney@goetzlawfirm.com

Joseph V. Womack (I.D. # 2641)
**WALLER & WOMACK, P.C.**
303 North Broadway, Suite 805
Billings, Montana 59101
Telephone:  (406) 252-7200
Facsimile: (406) 252-4266
Email: jwomack@jvwlaw.com

Attorneys for Joseph V. Womack, Trustee

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MONTANA

| | |
|---|---|
| In re<br><br>**JOHN HENRY SCHNEIDER**,<br><br>Debtor. | Case No. 14-61357 |

DECLARATION OF JOSEPH V. WOMACK

I, Joseph V. Womack, declare as follows:

1.     I am an attorney licensed to practice law in the State of Montana.  I am one of the attorneys for Joseph V. Womack as the Chapter 7 Trustee of the Bankruptcy Estate of John Henry Schneider (the "Estate"). This affidavit is submitted in support of the Final Application for Professional Fees (Attorney) and Costs (Goetz, Baldwin & Geddes and Waller & Womack) (Doc. 592).

2.      I am a shareholder at the law firm of Waller and Womack, P.C. ("W&W") and I am a member of the Bankruptcy Trustee Panel for the Bankruptcy Court for the District of Montana. I have served as a panel trustee and have practiced bankruptcy law before this Court since 1993.

3.      I was appointed as the trustee for the Schneider Bankruptcy Case in December of 20014. After undertaking an investigation of the Debtor's circumstances I determined that the Debtor had listed no assets or claims that could be used by the estate to pay creditors. It also appeared to me that there were claims that could be brought that might result in a recovery for the estate.

4.      While I often will hire myself to pursue such claims as an attorney for the estate it was clear to me that it would take a coordinated effort between myself and another attorney and firm to have any chance to successfully prosecute such actions. The Estate had virtually no money to retain and pay attorneys on an hourly basis and there was no reasonable anticipation of the Estate obtaining money to pay attorneys without the successful prosecution of recovery actions. I had also learned that the Debtor was an extremely litigious and aggressive person. As such, I approached Trent Gardner in early 2015, about retaining him and Goetz, Baldwin & Geddes, P.C. ("GGB") in this matter on behalf of the Estate to investigate and pursue recovery actions with me as co-counsel. I was also approached by the Objectors who asked if I would retain them on a contingency basis to pursue the claims. I declined to do so because of the conflict of interest that would have existed

because of their representation of claimants holding contingent, unliquidated and disputed claims against the estate.

5.   GGB agreed to represent the Estate, along with me as co-counsel, on a contingency basis and GGB agreed to front expenses for the litigation. I would not have agreed to pursue these contingency fee claims with GGB on an hourly basis because of the risk of nonpayment and because of the complex and risky nature of the anticipated litigation. If I had not been retained as co-counsel I would not have participated as an attorney in the litigation and would have left all legal work to GGB. This includes the use of my paralegal to assist with litigation work.

6.   An application was filed to approve the employment on a contingency basis. Doc. 50. No objections were filed and the Court approved the employment on a contingency basis. Doc. 50.

7.   Through multiple, complex adversary proceedings and proceedings in the main case, GGB and W&W successfully recovered $1,760,357 for the benefit of the Estate. The majority, if not all, of this recovery came from assets that were either not identified on Debtor's bankruptcy schedules or were identified, but were claimed not to be property of the Estate or to have no value to the Estate. In addition, based on evidence uncovered and developed in the prosecution of the contingency cases, Debtor was prosecuted criminally, pled guilty and was ordered to pay an additional $309,686.00 to the Estate as restitution.

8.   Attached hereto as Exhibit 1 and Exhibit 2 are the Attorney time entries from W&W. Exhibit 1 is for all attorney time in this case except for the

Discharge Adversary No. 15-00020. It includes work on all adversary cases and other general attorney work. W&W invested over 520 hours of attorney time between the Discharge Adversary and other legal work into this matter. W&W has combined all attorney time in its time sheet whether work was performed on adversaries or for general legal work because all attorney work became so intertwined in the recovery of assets that it was increasingly difficult to separate out the entries by category. W&W is not seeking hourly compensation on matters that he could seek hourly compensation and is exercising billing discretion in doing so.

9. W&W was deeply involved in the prosecution of the recovery actions, working side by side with GGB throughout the process and providing substantial assistance and support.

10. With respect to factors considered in determining the reasonableness of a fee award, the undersigned adopts in part portions of the Declaration of Trent M. Gardner filed concurrently, as well as providing other arguments:

    a. Risk: Courts may consider the "risk of not prevailing, and the concomitant risks of nonpayment, as well as the difficulty of finding counsel to litigate the case…." *In re Buckner*, 350 B.R. 874, 881 (Bankr.D.Idaho 2005). Here, the risk of not prevailing and nonpayment were substantial. The cases were complicated, entailing a sophisticated asset protection scheme. Further, the Estate had no money to pay an attorney. The only possibility for payment was to

prevail and recover money for the Estate. Because of this, it is extremely unlikely that any attorney would have undertaken representation at a standard hourly rate;

b. Novelty and complexity of issues: there is no doubt that the issues were complex. The case involved numerous entities, trusts and individuals and the Debtor had engaged counsel to plan a sophisticated asset protection plan. It was a substantial, complex and risky undertaking to attempt to unwind that plan. It also involved complex legal issues such as substantive consolidation and jurisdictional/removal issues;

c. There were complex issues regarding proofs of claims and the settlement and allowance of the same, including the claims of the Objectors and the claim of Meridian;

d. Special skills and experience of counsel: The undersigned has worked on many contingency cases and on an hourly basis as the attorney for the Trustee and has obtained excellent results in doing so;

e. Quality of representation and results obtained: The professionals recovered over $1.7 million for the Estate, the bulk of which came from assets that were either not disclosed by Debtor or not claimed as property of the Estate;

f. Time and labor required: The undersigned's Firm invested over 520 hours of attorney time into this matter as well as fronting expenses for

the estate. Waller & Womack worked closely with the Goetz firm on all aspects of the litigation;

g. Preclusion of other employment: The undersigned forewent other employment at standard hourly rates in order to accept representation of the Estate in this matter on a contingency basis. The undersigned could have spent such time on standard hourly matters where there would have been no risk of nonpayment;

h. Customary fee: A 40% contingency fee is a standard rate for these types of cases in the Bankruptcy Court for the District of Montana, especially in complex cases such as this one where the risk of not prevailing is substantial;

i. The amount involved: The amount involved was substantial. Further, given the litigious nature of Debtor, it was a near certainty that any recovery would require substantial time and expense;

j. The undesirability of the case: Given the complex nature of the case and the amount of time and expense required for any recovery, and the risk, the case was substantially undesirable. This is especially true at a normal hourly rate. Indeed, the undersigned's Firm would not have undertaken the representation at a standard hourly rate and it is doubtful that any other attorney would have either;

k. Nature and length of professional relationship with client: The undersigned's firm regularly represents the Trustee of bankruptcy estates and has done so for many years; and

l. Awards in similar cases: The undersigned's Firm has had 40% contingency fees approved in this District and numerous other firms have had such contingency fees awarded.

I declare under penalty of perjury that the foregoing is true and correct. Executed October 11, 2018, in Billings, MT.

                                          */s/ Joseph V. Womack*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies under penalty of perjury that on October 11, 2018, a copy of the foregoing pleading was served (i) by electronic means pursuant to LBR 9013-1(d)(2) on the parties noted in the Court's ECF transmission facilities and/or (ii) by mail on the following parties: None.

          /s/Joseph V. Womack
Joseph V. Womack
Attorneys for Trustee Joseph V. Womack